FRED COLAGIOVANNI *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF PROVIDENCE.

FEBRUARY 17, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

FROST, J. This is a petition for a writ of certiorari to review a decision of the zoning board of review of the city of Providence granting an exception authorizing the use of certain land for school purposes. The petitioners are abutting property owners who objected to the board's ac-

tion. The writ issued and in compliance therewith the pertinent records have been certified to this court.

The property in question is located at 450 Elmgrove avenue in a residence R-3 zone. It consists of almost an acre of unoccupied and unimproved land fronting on three streets, with a frontage of 235.73 feet on Elmgrove avenue, a depth of 169.22 feet on Savoy street, and 168.91 feet on Sargent avenue. On Elmgrove avenue it faces the Brown University baseball field and the Aldrich Gymnasium. There is a large parking lot on the opposite side of Savoy street which is used by the university. Adjoining such parking lot is the Brown Stadium which is used for football, track and other events. The land at the southwest corner of Savoy street and Elmgrove avenue is used as a bus terminal by the local transit company. Despite these facilities, the property in question is admittedly located in and surrounded by an excellent residential area.

Under the ordinance an educational institution is not a permitted use in any zone. However, such use may be permitted by the zoning board of review as a special exception by virtue of the power vested in such board by sec. 27, paragraph 6, chapter 544, of the zoning ordinance, as amended by chap. 1206, approved June 6, 1958. Section 27 permits such uses as special exceptions "in any zone where such uses are deemed essential or desirable to the public convenience or welfare and are in harmony with the various elements or objectives of the master plan and if their location is first approved by the Board as provided for in Sections 91 and 92."

The owner, Mrs. E. Margaret Nevin, has contracted to sell the property in question to the Providence Hebrew Day School on condition that permission to erect a school building thereon is granted by the proper authorities. In order to effectuate the sale of the property, she filed the instant application for a special exception under sec. 27, par. 6, as amended, for permission to use the premises for an "Edu-

cational institution for its usual purposes and activities and facilities incidental thereto."

The Providence Hebrew Day School is an accredited private educational institution with an enrollment of 180 students in classes ranging from the lower grades through the junior high school grades. The school has been in existence for over twelve years. It indisputably enjoys an excellent reputation in the community as an institution of learning. The record is replete with evidence attesting to the exemplary manner in which the school has been operated. Such evidence was presented by Rabbi William G. Braude of Temple Beth El and Rabbi Nathan Rosen, teacher and director of the LaGriff Foundation at Brown University, and by the statements of Dr. James L. Hanley, superintendent of public schools of the city of Providence, and Dr. Michael F. Walsh, commissioner of education for the state.

For several years the school was located in an old, converted residence on the east side of the city. That building has been condemned for further school use because its construction does not comply with fire regulations. Consequently it has been forced to vacate the premises and has been using the facilities of Temple Beth El.

At the hearing before the board, counsel for the school stated that the school considered the property in question an ideal site, since an appreciable portion of the student body came from that area and the school expected to draw more of its students therefrom in the future. It appears from the evidence that the maximum number of students which the school anticipates enrolling is 250; that school hours are from 9 a.m. to 3 p.m.; and that the school facilities will be used evenings as a meeting place for parents and for other school activities.

Copies of the plat plans and floor plan are in evidence. It appears from such plans that provision for off-street parking facilities for fifteen cars has been made; that they provide for compliance with all side, rear, and front yard

requirements of the pertinent city ordinance; that a play area completely shielded from the street and from the property directly to the west of the school site is provided for; and that the proposed facilities comply in all other respects with building requirements. It also appears from the evidence that the loading and unloading of school buses will take place on the premises; that all commercial deliveries will likewise be made thereon; and that members of the school staff will park their cars on the premises.

The applicant presented evidence that the presence of a school does not adversely affect surrounding property values or traffic conditions. Letters signifying no objection to the granting of the application were received from the traffic engineering department and the city plan commission.

Eighteen remonstrants appeared in person or by counsel in opposition to the application. The substance of their testimony was that the proposed use would create parking problems for neighboring property owners, increase traffic hazards, and adversly affect the value of surrounding properties as residences. They also offered the testimony of Stephen Reed, an expert realtor, who stated that in his opinion surrounding property values would be adversely affected by the granting of the application. The remonstrants also testified that there was no need for this particular school in that area and that the premises were inadequate for the proposed school.

After the hearing the board held the matter for three days for further study and then rendered a decision in favor of the applicant. After noting therein that it had taken a view of the premises and the surrounding properties, the board stated that it had examined and weighed all the evidence, that in its opinion the granting of the application would not cause any injury to the appropriate use of the neighboring properties, and that in its judgment the public convenience and welfare would be substantially served. On

the basis of such findings the application was granted as a special exception substantially in accordance with the plat plans and floor plan filed with it "on condition that the loading and unloading of school buses and commercial ve-. hicles be conducted off street on the premises."

In this proceeding petitioners are not challenging the power of the board under sec. 27, par. 6, to grant an exception in a proper case. Their claim is solely that the board abused its discretion and failed to comply with certain mandatory requirements of secs. 91 and 92 of the ordinance. It is well settled that on certiorari the burden of proof is on the petitioner to show that the board abused its discretion and that its decision is unlawful. *Perrier* v. *Board of Appeals,* 86 R. I. 138, 134 A.2d 141, 145. After a careful examination of the record we are of the opinion that they have not sustained that burden.

The petitioners' contention that there is no evidence to support the board's findings is without merit. The board had before it conflicting evidence with respect to the effect the proposed use would have on traffic conditions and property values, as well as on the question of the need of a school of this kind in the area in question. There is also evidence of the existence therein of several uses similar in nature to the requested use. In such circumstances there is no merit in petitioners' contention of insufficient evidence or of failure of the applicant to sustain her burden of proof before the board. It is well settled that in reviewing the action of a zoning board on a matter within its discretion this court does not weigh the evidence. If there is some evidence in the record upon which the board's decision may reasonably rest we cannot say that it abused its discretion. *Costantino* v. *Zoning Board of Review,* 74 R. I. 316, 322; *Roberts* v. *Zoning Board of Review,* 60 R. I. 202, 205.

We are satisfied that the board considered all the evidence and that it did not overlook any of petitioners' testimony with reference to traffic conditions or property values. It

may be that applicant's husband J. Benjamin Nevin, who gave expert opinion testimony on property values, has an indirect personal interest in the outcome of this matter, but it does not follow that the board erred in permitting him to testify. Such interest may affect the weight to be given his testimony, but it does not preclude its admissibility.

We now come to petitioners' charge that certain members of the board manifested throughout the hearing a predisposed attitude in favor of the applicant. It appears to us that the board's statement to petitioners that it preferred to avoid repetitious testimony, if possible, and its ruling prohibiting cross-examination of opposing witnesses are the bases for this claim. After carefully examining the transcript we are satisfied that the board performed its duty and that it did not deprive petitioners of their right to be fully heard.

Although zoning boards perform quasi-judicial duties, it is well recognized that hearings before such boards are to a certain extent informal in nature and do not necessarily have to be conducted as are hearings before a court. *Woodbury* v. *Zoning Board of Review,* 78 R. I. 319, 323; *Jacques* v. *Zoning Board of Review,* 64 R. I. 284, 288; *Robinson* v. *Town Council,* 60 R. I. 422, 435. In holding such hearings zoning boards are required to apply rules and regulations lawfully adopted by them equally and fairly to all persons properly before them. There is no claim by petitioners that such was not the case here. Although interested persons have a right to be heard in zoning hearings in accordance with rules and regulations lawfully adopted and impartially applied by such boards for the conduct of their hearings, there is nothing in the law entitling such persons to cross-examine opposing witnesses as a matter of right.

It appears from the record that the vote of the board was unanimous in favor of the application. The petitioners' contention that the board failed to record the vote of each

member participating in the hearing is without merit. They further contend that it failed to mail notices of its decision to petitioners or their counsel in accordance with the requirements of sec. 91 and that the decision is therefore invalid. The petitioners have neither alleged nor argued that they have been prejudiced by such failure. But in any event it is clear from the record before us that they have suffered no prejudice. The filing of the instant petition is ample proof that they knew of the decision in time to protect their rights of appeal to this court. See *Petrarca* v. *Zoning Board of Review*, 78 R. I. 130, 134; *Hirsch* v. *Zoning Board of Review*, 56 R. I. 463, 467.

There is no merit in petitioners' contention that the board failed to state the reasons for its decision. The board's findings that in its judgment the proposed use would substantially serve the public interest and welfare without injury to the appropriate use of the neighboring properties were the reasons for granting the application. See *Petrarca* v. *Zoning Board of Review, supra,* at page 133. Implicit in such findings is the further finding that the proposed use is in harmony with the various elements or objectives of the master plan and with the general purposes and intent of the ordinance.

The petition for certiorari is denied and dismissed, the decision of the respondent board is affirmed, and the records which have been certified to this court are ordered to be returned to the board.

*Fred Colagiovanni, Thomas R. DiLuglio,* for petitioners.

*William E. McCabe,* City Solicitor, *Harry Goldstein,* Assistant City Solicitor, for respondent.