BARTON CONTRACTING CO.,
INC., Respondent,

v.

CITY OF AFTON, Appellant.

No. 47580.

Supreme Court of Minnesota.

April 14, 1978.

Lawson, Ranum, Raleigh & Marshall and Raymond O. Marshall, Stillwater, Doherty, Rumble & Martin and David G. Martin, St. Paul, for appellant.

Petersen Lyons Tews & Squires and Gerald S. Duffy, St. Paul, for respondent.

Stanley G. Peskar, St. Paul, for League of Minn. Cities, amicus curiae, seeking reversal.

Popham, Haik, Schnobrich, Kaufman & Doty and Raymond A. Haik, Minneapolis, for The Aggregate & Readymix Assoc. of Minn., seeking affirmance.

Heard before PETERSON, YETKA, WAHL, and IVERSON, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

The city of Afton appeals from the order granting a peremptory writ of mandamus and from the order denying the motion for amended findings of fact, conclusions of law, and order for judgment or, in the alternative, a new trial. The writ directs the city to issue a special-use permit to Barton Contracting Co., Inc. (hereafter Barton), authorizing Barton to expand its open pit gravel operations in northern Afton. We reverse and dissolve the writ.

The Barton property involved in this case consists of two adjoining 80-acre parcels of

land located on a plateau on the northern edge of Afton. The northernmost parcel is referred to as the Hess parcel. Lying immediately south and somewhat to the east of the Hess parcel is the so-called Bishop parcel. Barton has mined gravel on the Hess parcel since 1961 and has been its record owner since 1963. To the north, northeast, and east of the Hess parcel there are various operational and planned graveling operations owned by others.

■ Barton became the record owner of the Bishop parcel in 1967, and up until 1977, when mining began pursuant to the district court's writ, the Bishop parcel was farm and grassland. The southern portion of the Bishop parcel remains in its natural state and slopes down to Lake Edith. To the west of the Bishop parcel (and south of the western portion of the Hess parcel) is the Metcalf Nature Center which is operated by the Science Museum of Minnesota. To the east of the Bishop parcel is private residential property. The Bishop parcel was first zoned "residential" by the Afton Town Board (as it was then known) in 1959. The city of Afton adopted a comprehensive-use plan in May 1975, and pursuant to that plan the Bishop parcel is now zoned "R–1" for residential use with 5-acre minimum lots. Under the Afton ordinance gravel mining is a permitted use where a special-use permit is obtained.[1]

The focus of the dispute between Afton and Barton is the northern portion of the Bishop parcel. In early 1976 Barton applied to the city for a special-use permit to expand its operations from the Hess parcel[2] onto the northern portion of the Bishop parcel. Up until now it has been essentially a farmland buffer between (a) the graveling operations on the Hess parcel and elsewhere to the north, and (b) the recreational, residential, and nature areas to the south and southwest.

Between March and September 1976 numerous meetings were held between representatives of Barton and Afton. On September 14, 1976, the Afton Planning Commission held a public meeting on the Barton application. Representatives of Barton and numerous opponents to its application spoke, and the commission recommended to the city council that Barton's application be denied. One week later the city council held a public hearing on the Barton proposal. Again Barton representatives and opponents spoke and the city council voted to deny Barton the special-use permit.

Shortly after the city council's action Barton commenced this action seeking a writ of mandamus. In ordering the writ, the district court concluded that Afton had denied Barton procedural due process and that, because there was insufficient evidence to support its action, Afton's denial of the permit was arbitrary, capricious, and unreasonable.

■ 1. We turn first to the issues of procedural due process. Prefatory to specific consideration of the three respects in which the district court concluded that Barton was denied procedural due process, we observe generally that the requirements of due process must be measured according to the nature of the government function involved and whether or not private interests are directly affected by the government action. In zoning proceedings the basic determination is whether the proceedings are legislative or judicial in nature. When a municipal governing body adopts or amends a zoning ordinance its action will usually affect an open class of individuals, interests, or situations, so that the governing body is then acting in a legislative capacity, *Sun Oil Co. v. Village of New Hope*, 300

---

1. A special-use permit differs from a variance. A special-use provision permits property, within the broad discretion of the governing body, to be used in a manner expressly authorized by the ordinance. A variance provision permits particular property to be used in a manner forbidden by the ordinance by varying the terms of the ordinance. *Zylka v. City of Crys-tal*, 283 Minn. 192, 195, 167 N.W.2d 45, 49 (1969).

2. Since 1971 Barton's graveling operations on the Hess parcel have been conducted pursuant to a special-use permit issued annually by Afton. These operations on the Hess parcel are not in dispute here.

Minn. 326, 220 N.W.2d 256 (1974). Any rights of procedural due process in such proceedings are minimal. When the governing body considers an application for a special-use permit pursuant to such ordinance, its action no longer bears on an open class of persons but directly on the particular interests of the applicant, in which case it acts in what is usually called a quasi-judicial capacity. *Sun Oil Co. v. Village of New Hope, supra.* The basic rights of procedural due process required in that case are reasonable notice of hearing and a reasonable opportunity to be heard. These quasi-judicial proceedings do not invoke the full panoply of procedures required in regular judicial proceedings, civil or criminal, many of which would be plainly inappropriate in these quasi-judicial settings.

■ The first respect in which the district court concluded that Barton was denied due process was that Barton was not allowed to cross-examine those who made adverse statements at the public hearing before the planning commission or the city council. We hold that cross-examination is not an essential of procedural due process in such hearings. *Colagiovanni v. Zoning Bd. of Review of Providence,* 90 R.I. 329, 158 A.2d 158 (1960); *Zimarino v. Zoning Bd. of Review of Providence,* 95 R.I. 383, 187 A.2d 259 (1963). The statements made at such a public hearing, unlike a regular judicial proceeding, are not given under oath and are not limited by the traditional rules of evidence. They are usually broad expressions of opinion in favor or against the application. Barton was accorded, and exercised, the opportunity to present information and argument to rebut opposing statements.[3]

■ The second respect in which the trial court concluded that Barton was denied procedural due process concerns advance copies of written materials presented at the city council hearing. The trial court concluded that Barton did not receive the written material in sufficient time prior to the hearing to prepare a response. The material consisted largely of letters expressing the opinions of private individuals who were opposed to Barton's project. This was not material which required lengthy analysis in preparation of a response. And, there is no indication in the transcript of either hearing that Barton requested a delay. Even if a request to delay the second hearing was in fact made, we are convinced that its denial did not deny Barton procedural due process. The city council had wide discretion in setting the date of the second hearing, and Barton has not particularized in any way how or why its interests were prejudiced by the city council's action. We hold, therefore, that there was no denial of due process.

■ The third respect in which the trial court concluded that Barton was denied procedural due process is based upon an unsupported finding that three of the city council members relied on information outside the record. The information in question concerned the general nature of geological formations underlying the plateau on which the Barton property was located. Information on these formations and their bearing on possible environmental damage had been presented to the city council 2 years earlier in connection with a proposal for a sanitary landfill on the Hess parcel. But the information clearly was made a part of the record in the present case. A number of those testifying at the hearing, particularly Dr. Dale Chelberg, testified concerning this same underlying geology and risk of environmental damage, so that this information was a part of the record on which the city council could base its decision.

In sum we find that Barton was not denied procedural due process in any of the three respects found by the district court. Our review of the record convinces us that Barton was accorded the basic procedural due process rights which were appropriate

**3.** We note, in addition, that the asserted right of cross-examination was waived. The transcripts of the two hearings reflect statements by counsel for Barton but there is no indication that any request was made to cross-examine those who made statements adverse to Barton. See, *Gibson v. Talbot County Board of Zoning Appeals,* 250 Md. 292, 242 A.2d 137 (1968).

given the quasi-judicial character of the proceedings.

■ 2. We turn now to the merits of Afton's denial of Barton's application for a special-use permit for the Bishop parcel. The basic principle, as stated in our leading case, *Zylka v. City of Crystal,* 283 Minn. 192, 196, 167 N.W.2d 45, 49 (1969), is that the application may not be denied "arbitrarily" but that "the administering body, be it the council itself or a planning commission to which power to act is delegated, has broad discretionary power to deny an application for a special use permit * * *." Subsequent cases such as *Inland Construction Co. v. City of Bloomington,* 292 Minn. 374, 195 N.W.2d 558 (1972), and *Metro 500, Inc. v. City of Brooklyn Park,* 297 Minn. 294, 211 N.W.2d 358 (1973), in determining the boundary between permissibly broad discretionary action and an impermissibly arbitrary denial, have looked to whether the zoning authority stated reasons for its decision. In *Corwine v. Crow Wing County,* 309 Minn. 345, 352, 244 N.W.2d 482, 486 (1976), we explained how a statement of reasons affected the scope of judicial review to determine whether the denial was arbitrary:

"* * * Since the court is reviewing the decision of another body, it should, of course, confine itself at all times to the facts and circumstances developed before that body. If the decision-making body does not state reasons contemporaneously with its action, its decision will be prima facie arbitrary, and it will bear the burden of persuading the reviewing court that the facts and circumstances before it gave rise to legally sufficient reasons for denial or revocation. *If the decision-making body does state reasons, review will be limited to the legal sufficiency and factual basis for those reasons. When reasons are given, the party seeking review must bear the burden of persuading the reviewing court that those reasons are legally insufficient.*" (Italics supplied.) [4]

■ The recorded reasons for denying Barton's application for a special-use permit, as the trial court found, were:

"1. That it is contrary to the comprehensive plan.

"2. That further excavation appears to increase the danger of irreparable environmental damage.

"3. That the citizens in the area of Afton are opposed to the use of this land to further mining.

"4. That the applicant has not proven that the proposed use would not effect health, safety, morals and welfare of the occupants of the surrounding land.

"5. That the end use would not be compatible with the comprehensive plan."

We turn to a consideration of each of these reasons in light of the standard articulated in *Corwine* that Barton, as the party seeking review, bears the burden of persuasion that these reasons are either without factual support in the record or are legally insufficient.

1. *That the use is contrary to the comprehensive plan.*

The Afton comprehensive land-use plan is included in the record and was discussed at several points during the hearings. The plan does not specifically mention gravel mining, so there was room for both Barton and its opponents to argue whether or not graveling on the Bishop parcel would be consistent with the plan. The plan is, however, permeated with evidence of a strong desire to preserve the rural character and unique scenic beauty of Afton and the St. Croix Valley. These aims, as expressed in the plan, were discussed at the hearings.

■ A municipality may weigh whether the proposed use is consistent with its land-use plan in deciding whether to grant a special-use permit. On the facts of this case, the city council's determination that graveling on the Bishop parcel would be inconsistent with the plan was not with-

4. "When a special use permit is approved," we said in *Corwine v. Crow Wing County,* 309 Minn. 345, 352, 244 N.W.2d 482, 486, "the decision making body is always implicitly giving the same reason—all requirements for the issuance of the permit have been met."

out evidentiary support and was within the bounds of the council's informed discretion in interpreting the plan. Afton's determination that the Barton proposal was inconsistent with its adopted comprehensive plan was a legally sufficient reason for denial of a special-use permit.

2. *That further excavation appears to increase the danger of irreparable environmental damage.*

■ Two types of possible environmental damage were discussed at the hearings on the Barton proposal. These were, first, interference with the underground water table due to loss of gravel layers and, second, potential erosion of the south slopes leading down to Lake Edith. There was a sharp conflict in the testimony concerning the likelihood of either form of environmental damage. Dr. Dale Chelberg, a biologist associated with the Metcalf Nature Center (which adjoins the Bishop parcel), discussed at length the basis for his belief that the risk of both forms of environmental damage was substantial. On Barton's behalf a civil engineer and a planning consultant discussed at length the reasons for their view that the risk of environmental damage was slight or nonexistent. The city council obviously chose to credit the testimony of Dr. Chelberg and other opponents of Barton's proposal more than the testimony of those favoring Barton's proposal.

The standard for assessing conflicting evidence was persuasively expressed in *Boisvert v. Zoning Bd. of Rev. of the Town of South Kingston,* 94 R.I. 107, 178 A.2d 449 (1962), a case which, like the present case, involved judicial review of the denial of a permit to mine gravel on land zoned as residential. The reasons given by the zoning authority in *Boisvert* for denying the permit are generally similar in content and specificity to the reasons given by the Afton City Council in the present case. In reviewing the conflict in the testimony before the zoning authority the *Boisvert* court observed that its function was not to weigh the evidence, but to review the record to determine whether there was legal evidence

to support the zoning authority's decision. The court upheld denial of the permit as we now do here.

We hold, upon careful review of the record, that there was sufficient evidence to support the council's determination as to the threat of environmental damage. That determination was a legally sufficient reason for denial of a special-use permit.

3. *That the citizens in the area of Afton are opposed to the use of this land to further mining.*

■ The record of the hearings leaves no doubt as to the ample factual basis for this determination. However, under our cases the simple fact that community members oppose a landowner using his land for a particular purpose is not a legally sufficient reason for denying a special-use permit. *Minnetonka Congregat. of Jehovah's Witnesses v. Svee,* 303 Minn. 79, 226 N.W.2d 306 (1975); *Twin City Red Barn, Inc. v. City of St. Paul,* 291 Minn. 548, 192 N.W.2d 189 (1971). We hold that community opposition to Barton's application was not a legally sufficient reason, in and of itself, for denying Barton a special-use permit.

4. *That the applicant has not proven that the proposed use would not affect the health, safety, morals, and welfare of the occupants of the surrounding land.*

■ At the city council's hearing there was testimony by an experienced real estate broker that in his opinion expanded gravel mining would have an adverse effect on the value of surrounding property. There was thus a factual basis for at least that part of the council's determination which concerned the welfare of the surrounding landowners. The determination that their welfare would be detrimentally affected was a legally sufficient reason for denying Barton's application.

5. *That the end use would not be compatible with the comprehensive plan.*

■ Under the relevant zoning ordinance residential use was the end use con-

templated for the Bishop parcel. There was testimony at the hearing that geological and soil conditions would not allow residential use following gravel mining. Barton also proposed light industrial or agricultural use after mining, but there was testimony that these end uses would not be desirable following gravel mining.

The Afton City Council was rightly concerned with the use of the land following the completion of mining, and on the record in this case there was an adequate factual basis for the council's conclusion that gravel mining would be incompatible with a residential end use of the land. This incompatibility between Barton's proposed use and the residential end use specified in the zoning ordinance was a legally sufficient reason for denying Barton a special-use permit.

 In sum, for four of the five reasons given by the Afton City Council for denying the permit Barton has not met its burden of showing that they were without factual support in the record or were legally insufficient. We hold that the denial of the permit on the basis of reasons 1, 2, 4, and 5 was proper.

Our holding in this case is supported by the decisions of other courts in analogous cases. In *Dolomite Products Co. Inc. v. Kipers,* 19 N.Y.2d 739, 279 N.Y.S.2d 192, 225 N.E.2d 894 (1967), a particularly relevant example, the landowner brought a declaratory judgment action against members of the town board to determine the status of his land. Prior to the enactment of a zoning ordinance the landowner had purchased parcels A, B, and C, but had begun quarrying only on parcel A. The Court of Appeals of New York held that the zoning ordinance was applicable to, and barred quarrying of parcels B and C. In the present case it will be recalled that the Bishop parcel has been zoned as residential since 1959. Barton did not become the record owner of the Bishop parcel until September 1967. Thus Barton is in an even weaker equitable position than the landowner in *Dolomite* to argue for the

expansion of its mining operations from the Hess parcel onto the Bishop parcel. The expansion of open pit mining operations onto adjacent acquired parcels was similarly rejected in *Struyk v. Samuel Braen's Sons,* 17 N.J.Super. 1, 85 A.2d 279 (Super.Ct.App. Div.1951), and *Fredal v. Forster,* 9 Mich. App. 215, 156 N.W.2d 606 (1967).

Reversed.

OTIS, J., took no part in the consideration or decision of this case.

IRVING C. IVERSON, Justice * (dissenting).

I respectfully dissent from the majority decision.

The decision of the majority of the court does not conform to the requirements necessary for denial by a municipality of a request for a "special use" permit set forth clearly in *Zylka v. City of Crystal,* 283 Minn. 192, 167 N.W.2d 45 (1969).

The denial of Barton's request for a "special use" permit, to be a proper exercise of the city of Afton's authority, must conform to the following language expressed in *Zylka* :

"* * * It could also have justifiably denied the application if it had determined that the proposed use would endanger the public health and safety and the general welfare of the area affected, and if the factual basis and reasons for that determination at the time the action was taken were expressed in findings, reflected in the council minutes, or otherwise established in judicial proceedings challenging its determination." (283 Minn. 197, 167 N.W.2d 49)

The "reasons" given by the Afton city council in denying the application of Barton were conclusions of law, not "findings" of fact as mandated by *Zylka v. City of Crystal, supra.*

It must be kept in mind that the application for a special-use permit to mine gravel

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

submitted by Barton provided for a temporary use of the subject property, not a permanent use. Adequate provisions had been made, guaranteed by a bond furnished by applicant Barton, to restore the premises to a suitable condition so as not to adversely affect the area environmentally. The contemplated special-use, mining of subsurface gravel, was in conformity with existing zoning requirements of the city of Afton, and the so-called comprehensive plan did not address itself to gravel mining operations. It appears clear, however, that the highest and best temporary use of the subject property, as well as much of the surrounding area including the contiguous property owned by the State of Minnesota which contains substantial deposit of gravel, is at present gravel mining.

Factual support for the city of Afton's first reason for refusal of the permit was not legally sufficient, having in mind that the special use was temporary and with the requirements for restoration of the premises and the safeguards provided including the bond requirement.

The second reason for the city's denial of the permit was not factually supported so as to satisfy the test of legal sufficiency. The testimony of Dr. Dale Chelberg, a biologist associated with the Metcalf Nature Center (which adjoins the Bishop parcel, the subject property), was relied upon by the city in adopting this reason. Dr. Chelberg, lacking the necessary qualifications as an expert on geological matters, could not provide sufficient factual reasons to support a legally sufficient basis for a realistic or reliable opinion on the question of environmental damage. His testimony and opinions would not be permitted in a trial before a court or a jury.

I agree with the majority opinion that the city's third reason was not a legally sufficient reason.

The majority, as well as the city of Afton, mistakenly placed the burden of proof on the applicant in the city's fourth reason stated at the time of its denial of the permit. A special-use permit contemplates a use which is permitted by the existing zoning. It was incumbent therefore that to deny the applicant Barton's application the city must show at the time it denies the permit that the granting of the permit will adversely affect or endanger the public health and safety and the general welfare of the area affected, as stated in *Zylka v. City of Crystal, supra.*

The only evidence on this subject was the testimony of a real estate broker who testified that the permit would adversely affect real estate values. Again having in mind the temporary use contemplated, this evidence alone, absent any evidence that the health, safety, morals, and general welfare would be adversely affected, is legally insufficient to sustain the city's reason on this ground.

The city's fifth reason for its denial of Barton's application is perhaps the most convincing reason for the denial. However, because the city maintains continuing authority over zoning, land use laws, and building permits and may insist that certain requirements and safeguards be fulfilled by the applicant in restoring the subject property to suitable grades and structurally suitable soil for the erection of buildings, whether they be ultimately residential or light industrial use as changing conditions may dictate, I find this reason to be legally insufficient to support the denial of the special-use permit.

I find that the city of Afton acted arbitrarily and capriciously in denying the application of Barton for a special-use permit when it acted in a quasi-judicial capacity.

I would sustain the trial court or, in the alternative, remand with directions that the city council conduct further hearings in full conformity with the prior decisions of this court.

KELLY, Justice (dissenting).

I join in the dissent of Mr. Justice Iverson.