## Shuey v. Bechtel

*Thomas A. Ehrgood*, for plaintiffs.
*Loren A. Schrum*, for defendants.

WALTER, *J.*, February 17, 1982—Plaintiffs Martin N. Shuey and his wife, Marian L. Shuey, filed their complaint in equity February 18, 1981, alleging that defendants, George Bechtel and the South Lebanon Township Board of Supervisors (Board) are responsible for removing a drainage swale that had been previously constructed and maintained by the township to service plaintiffs' land. Plaintiffs seek restoration of the swale to prevent anticipated damage from heavy precipitation.

Defendants have each filed a motion for summary judgment. Oral arguments have been waived by all parties upon stipulation of counsel that we would decide the matter on briefs. That we shall do.

The board has raised three issues. First, can the board be compelled to enforce a private easement over land not owned or controlled by the township? Second, can the board be compelled to reopen the swale without defendant Bechtel's consent? Third, can plaintiffs maintain their cause of action having suffered no damages?

Defendant Bechtel has briefed two issues supporting his motion for summary judgment, namely, whether a property owner has a duty to maintain a swale to prevent water runoff onto an adjoining property and whether plaintiffs have a viable cause of action if they have not suffered any damages as a result of Bechtel's land use?

Plaintiffs have proposed six issues in response to defendants' motions. First, do material issues of fact exist ". . . from the depositions and the pleadings as to whether or not a swale had existed on the Bechtel property and the use for which it was made?" Second, must the township and Bechtel maintain a visible swale easement constructed for plaintiffs' benefit, upon land acquired by Bechtel containing that swale? Third, are damages necessary to pursue restoration of the drainage swale? Fourth, would Bechtel's deed to land with the swale include language relating to culverts, streams and drainage courses subject to maintenance, use and repair rights, if such swale was not in existence? Fifth, does knowledge of the swale by Bechtel before and after his land purchase impute his intent to own property encumbered by a swale easement? Sixth, has the Board assumed responsibility for the continued existence of the swale by creating the need for the swale, constructing the swale and maintaining the swale?

A sequence of the facts from the pleadings including depositions, will facilitate our task. Plain-

tiffs purchased real estate in 1967 which sloped downward from east to west into a natural basin on "railroad property." Adjoining landowners' properties also drained into the basin. However, over a period of time North and South Lebanon Townships had been placing fill in the basin from construction of a drainage ditch for nearby Lebanon Chemical Company which lay northeast of plaintiffs' land. Attracted by the rock and earth fill neighbors began using the basin area as a garbage dump while South Lebanon Township continued using the basin as a fill dump.

" . . . When the encroachment got that far and come close to my land, the garbage that was being dumped there, is when I complained to the township [South Lebanon Township] about this. At that time, they cleaned up the garbage, and they constructed a swale. After that, on occasions when they would see it or someone would complain, or I would complain that there was garbage being put there, they would clean out the swale. That is the story of how the swale got there and who put it there and why, because it was a necessary thing to have drainage from our area there, which the township also drained into that." (Dep. Martin Shuey, p. 8-9, also see 37.)

The South Lebanon Township Manager remembered personally cleaning out debris and garbage from the swale in spring, 1978, and that it was the township that constructed the swale. (Dep. Herr, 12-13)

Defendant Bechtel testified that South Lebanon Township built the swale on the railroad property in late 1974 or early 1975. Bechtel's family had lived on property adjacent to the basin site since May, 1969, but on January 23, 1980, he bought the basin

land, which now included the swale, from the Eastern Real Estate Company, the land holding company of the Pennsylvania Railroad. Bechtel then began filling in the "ditch," as he characterizes the swale because of the steep sides. He finished by February 14, 1980. (Dep. Bechtel, 9-11) Bechtel called plaintiff to mention he was filling the "lot," including the swale, but plaintiff did not complain of any drainage problems this would cause nor attempt to stop Bechtel in any way. Instead, plaintiff felt this was a township problem. (Dep. Shuey, 45-46)

Both defendant Bechtel and plaintiff Shuey separately stated in their depositions that the Agnes flood of 1972 was the only time excess water has ever accumulated on plaintiffs' property; before and after the basin was dry. (Dep. Shuey at 62, 66-67; Bechtel at 22)

Plaintiffs urge that the swale was built specifically to drain excess precipitation from their land, since the railroad property, now owned by defendant Bechtel, was elevated by the fill.

This ostensibly created the necessity of the swale for drainage of all adjoining properties to the basin area, although we note that plaintiffs never asked that a swale be built. (Dep. Shuey, 38-39)

Plaintiffs have characterized their rights to the swale in the nature of an implied easement. We must therefore examine whether an easement was created and whether either or both defendants are duty bound to restore the swale.

Drainage rights in Pennsylvania fall into two categories which stem from the common law: surface waters and diffused surface waters. Surface waters relate to defined watercourses including lakes, rivers and streams. Diffused surface waters encompass the uncollected flow from falling rain,

melting snow or other precipitation. See Kunkle v. Ford City Borough, 305 Pa. 416, 158 A. 2d 159 (1931); Pennsylvania Water Management, Vill.L.Rev., Vol. 5, No. 5, p. 903 (1976-1977).

Plaintiff is concerned with the latter. It is undisputed that water has always drained from east to west, from plaintiffs' to defendant's property, that defendant's property lost its basin effect when it was used as a garbage and fill dump, and that the township had gratuitously constructed the swale at no charge to plaintiffs prior to defendant's ownership of the land.

Although plaintiffs have inferred the Pennsylvania Railroad's consent for allowing the township to construct the swale on railroad property, our Supreme Court has expressed the law when property owners improve their land resulting in elevation or contour changes.

"The owners of lots in cities and towns buy and own with the manifest condition that the natural or existing surface is liable to be changed by the progress of municipal development. All such owners have equal rights neither lessened nor increased by priority or improvement, and the primary right of each owner is to protect himself and his lot from loss or inconvenience from the flow of surface water. The owner at the foot of the slope is under no obligation to allow his lot to continue as a reservoir for the surplus water of the neighborhood. He may shut it out by grading or otherwise and the fact that thereby he may incidentally increase the flow on the adjoining lot, neither makes him answerable in damages nor affects the adjoining owner's right in his turn to shut out the original, plus the increased flow on his lot. *The owner cannot be coerced as to time or manner of improvement by risk of having put upon him the burden of providing for the flow upon others.*" (Emphasis added.)

"Some things of course he may not do. He may not proceed negligently so as to do unnecessary damage to others. But so far as he acts upon his right to protect his enjoyment of his own property, any incidental loss to his neighbor is damnum absque injuria. It is clearly settled, however, first, that he may not obstruct a natural channel for the flow of the water, or a channel that has acquired the character of an easement . . . " Reilly v. Stephenson, 222 Pa. 252, 256-257, 70 A. 1097 (1908); Kunkle v. Ford City Borough, 305 Pa. 416, 419, 158 A. 159 (1931).

Reilly, supra., embodies our key issues, which we will examine sequentially. Plaintiff testified that prior to the swale, water flowed from his property onto the railroad property, now owned by defendant Bechtel. After the swale, the water flowed from plaintiffs' land into the swale and out to an alley. (Dep. Shuey, p. 62)

The case law has treated such circumstances where the natural flow has been altered causing damages.

" . . . [I]t is clear that only where the water is diverted from its natural channel or where it is unreasonably or unnecessarily changed in quantity or quality has the lower owner received a legal injury. . . . " Lucas v. Ford, 363 Pa. 153, 69 A. 2d 114, 116 (1949); Breiner v. C. & P Home Builders, Inc., 398 F. Supp. 250, 252 (E.D. Pa. 1975); Bogar v. Sperry Rand Corp., 504 F. Supp. 872, 875 (E.D. Pa. 1980).

The trend in Pennsylvania, therefore, is to examine the lower landowner for injuries. Our facts concern the upper landowner, plaintiffs, and their fear of potential and purely speculative damages threatened by defendant Bechtel removing the swale from his land constructed by the

township and the possible backwash effect that might occur to plaintiff from drainage that previously had flowed onto defendant's property. But Reilly, supra, indicates that a landowner has the right to improve his land and alter the surface flow of waters, notwithstanding any previous use the land may have had as a collection basin for adjoining property owners. Furthermore, there are no pleadings indicating any damage that has been caused to plaintiff, by plaintiff's own admission.

The Reilly court also proscribed a landowner from interfering with any easement. Plaintiffs have referred us to the Bechtel deed as containing an easement clause and also the actions of South Lebanon Township constructing and maintaining the swale as evidence that an implied easement did exist.

" . . . The determination of the existence or creation of an implied easement depends upon the intention of the parties as inferred from the circumstances existing at the time of the severance of the tract . . . " Lerner v. Poulos, 412 Pa. 388, 194 A. 2d 874, 876 (1963).

" . . . [W]here an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be, and this irrespective of whether or not the easement constituted a *necessary* right of way. . . . " (Emphasis in original.) Tosh v. Witts, 381 Pa. at 258, 113 A. 2d at 228; Burns Mfg. Co. Inc. v. Boehm, 467 Pa. 307, 356 A. 2d 763, 767 (1976).

The "railroad company" owned defendant Bechtel's land when the swale was built, but the pleadings clearly state that South Lebanon

Township constructed the swale. Although the swale was clearly visible to all parties, under Lerner, supra, there is nothing before us suggesting an intention of the railroad company to provide this easement. Conversely, plaintiffs approached South Lebanon Township with their problem and the Board responded by cleaning out the basin and digging a swale. It is entirely possible, however, that the swale was dug for the benefit of the railroad company, with incidential benefits to all adjoining property owners, evidenced by the swale existing entirely on railroad property. (Dep. Shuey, 57-58; Bechtel, 13) Since no easement was apparently ever expressly granted or recorded by either the Pennsylvania Railroad or plaintiffs, the Shueys would have to prove that an implied easement existed, in which plaintiffs participated as the dominant tenement and the railroad company intended itself to be burdened as the servient tenement. Plaintiffs may have benefitted from the swale abutting their land, but there are no questions of material fact suggesting any intent to convey an easement to plaintiffs.

Plaintiffs argue that intent to convey an implied easement was demonstrated from South Lebanon Township's access to the railroad property to construct the swale. But the easement was not the township's to convey, notwithstanding any usufruct plaintiffs may have derived from its construction. Consequently, we cannot give effect to the boiler plate easements provision in Bechtel's deed regarding the swale. Although the township seemingly accommodated plaintiffs' complaints by constructing and maintaining the swale, they were under no duty to do so from the pleadings presented here, and cannot enter upon defendant Bechtel's land to reopen the swale without the latter's express consent.

All issues posited by plaintiffs have either been addressed by implication or are moot such as his third, respecting the question of damages.

Accordingly, we find no material issues of fact and shall grant each defendant's motion for summary judgment.

### ORDER OF COURT

And now, February 17, 1982, for the reasons set forth in the accompanying opinion the motions for summary judgment filed by each of the defendants are granted.

The prothonotary is directed to enter judgment in favor of defendants and against plaintiffs accordingly.