**MINNETONKA MOORINGS, INC.**

v.

**CITY OF SHOREWOOD et al.**

No. 04–CV–638 (JMR/FLN).

United States District Court,
D. Minnesota.

May 3, 2005.

Amy K. Amundson, Peter Daniel Gray, Timothy J. Nolan, Minneapolis, MN, Walter M. Baker, Edina, MN, for Minnetonka Moorings, Inc.

George Carlton Hoff, Justin L. Templin, Eden Prairie, MN, for City of Shorewood.

## ORDER

ROSENBAUM, Chief Judge.

This matter is before the Court on the City of Shorewood's motion for summary judgment. All individual defendants have been dismissed, leaving the City of Shorewood ("the City") as the only remaining defendant. For the reasons stated herein, the City's motion is granted, and this matter is dismissed with prejudice.

### I. *Background*

Plaintiff, Minnetonka Moorings, Inc. ("MMI"), filed this suit against the City for promulgating a zoning ordinance which it claims violates its rights under the equal protection and due process clauses of the United States Constitution and the Minnesota Constitution. MMI is a Minnesota corporation owned and operated by John and Judy Cross, doing business as the Shorewood Yacht Club ("the Yacht Club").

In 1974, MMI purchased land located on Lake Minnetonka's Gideon Bay on which the Yacht Club is situated. In 1975, MMI applied for a conditional use permit allowing it to operate the Yacht Club. The City denied the application. This led to a 1977 state lawsuit against the City in which MMI prevailed. As a result, the City issued a conditional use permit in 1978 granting the Yacht Club authority to build 82 sailboat mooring slips, with two of those slips available for powerboats for facility management.

When the Yacht Club opened, Woody Love—today the City Mayor—was employed by the Crosses as the Yacht Club

manager. He worked there in 1985 when the property was sold, and through the terms of several successive owners. In 1995, the Crosses reacquired the Yacht Club and terminated Love's employment.

The Yacht Club is in an area zoned single family residential/shoreland. It is presently a lawful nonconforming use. Under the City's zoning ordinance, this type of parcel may continue preexisting nonconforming uses, but may not enlarge or expand them.

In 1998, the Yacht Club purchased an adjacent parcel, which had been used by neighborhood residents to dock powerboats. In 1999, the City passed Ordinance No. 355 requiring that Gideon's Bay marinas could harbor only sailboats. The ordinance states:

> Issuance of a license shall take into consideration the historic use of the site under consideration with respect to the use of power boats. With exception of power boats necessary for the operation of the facility, water harboring of boats on any site located in Gideon's Bay shall be limited to sailing boats only.

Shorewood Code of Ordinances § 1201.24, subd. 10(d).

In 2000, MMI applied for a conditional use permit seeking to increase the Yacht Club's dock slips from 82 to 117. The City granted the permit, and MMI docked additional powerboats in the added slips. The City considered this a violation of Ordinance No. 355 and issued a citation. In 2002, MMI was criminally prosecuted on the citation for violating the zoning ordinance. MMI pleaded guilty to the charge.

In 2003, MMI applied to the City council seeking to amend Ordinance No. 355 and its conditional use permit to allow docking of both sailboats and powerboats at the Yacht Club. A public hearing was held. The Mayor presided at the meeting and voted on the proposal, which was denied. Plaintiff seeks relief in this Court.

## II. Claims

Plaintiff asks this Court to declare Ordinance No. 355 unconstitutional. Plaintiff brings Section 1983 equal protection and due process claims under the United States Constitution, amend. XIV. It further claims violation of its rights under the State of Minnesota's Constitution, art. I, §§ 2 and 7. The due process clause offers both procedural and substantive protection.

## III. Discussion

### A. Summary Judgment

Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49, 106 S.Ct. 2505; *see also Hartnagel v. Norman*, 953 F.2d 394, 395–96 (8th Cir.1992). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original). If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

Plaintiff challenges defendant's conduct under the U.S. Constitution pursuant to 42

U.S.C. § 1983. "In order to survive a motion for summary judgment under § 1983, the plaintiff must raise a genuine issue of material fact as to whether (1) the defendants acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Kuha v. City of Minnetonka*, 365 F.3d 590, 596 (8th Cir. 2003) (amending and substituting opinion filed May 8, 2003) (quoting *Cooksey v. Boyer*, 289 F.3d 513, 515 (8th Cir.2002)). All parties agree the actions in this case occurred under color of state law. The Court, therefore, need only consider whether defendant deprived plaintiff of its constitutionally protected rights.

## B. Equal Protection Clause [1]

 The U.S. Constitution provides that "[no state shall] deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Minnesota Constitution provides that no member of the state "shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof." Minn. Const. art. I, § 2. Unless a suspect class or fundamental right is involved, equal protection claims are analyzed under a reasonable basis standard. This requires a statute treating one group of citizens differently from another to be reasonably related to a legitimate state interest. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

 The Court must first determine whether the ordinance in question serves a legitimate purpose, and second, whether the classification would reasonably promote that purpose. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 462–63, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).

Minnesota's rational basis test involves the same basic elements. First, the classification must not be manifestly arbitrary or fanciful, but rather genuine and substantial, with a natural and reasonable relationship to the particular needs. Second, there must be an evident connection between the classification and the legislation. And finally, the purpose of the statute must be such that the state can legitimately attempt to achieve it. *Scott v. Minneapolis Police Relief Ass'n, Inc.*, 615 N.W.2d 66, 74 (Minn.2000); *State v. Russell*, 477 N.W.2d 886, 888 (Minn.1991). Simply stated, the City cannot ban powerboat dockage for some businesses, and allow it for others similarly situated, absent a legitimate purpose reasonably related to the distinction.

 Courts are properly deferential as municipalities manage their affairs. A court ought to invoke its power only when there is no arguable basis for a municipality's decision. *White Bear Docking and Storage, Inc. v. City of White Bear Lake*, 324 N.W.2d 174, 175 (Minn.1982). Here, the City advances multiple purposes for its powerboat restriction claiming concerns about the intensity of the use of Gideon's Bay; accelerated erosion of the shoreline; excessive visual, noise, and air pollution; the safety of small watercraft; and water quality and traffic problems. These are legitimate concerns, properly addressed in a city's zoning ordinances.

 The next inquiry is whether these concerns are related to the ordinance's restrictions. Plaintiff points out that, while the City restricts powerboat dockage for the Yacht Club, it places no such restriction on other marinas in the City. This plaint is unavailing, because the Yacht Club is the only marina located on Gide-

---

**1.** Equal Protection Clause claims are subject to the same analysis under both the Minnesota and the United States Constitutions. *Scott v. Minneapolis Police Relief Ass'n*, 615 N.W.2d 66, 74 (Minn.2000).

on's Bay. Gideon's Bay is not at all identical to other parts of Lake Minnetonka. It is smaller, more enclosed, and has always been a quieter "residential" body. Marinas in other parts of the City are more open to the larger lake area and have been less restricted in the past. The Court finds Gideon's Bay is different from other parts of the lake, and a marina on Gideon's Bay is not similarly situated with other marinas to which plaintiff would offer comparisons.

The Court finds the powerboat restriction reasonably related to the City's stated interest by controlling noise, boat traffic difficulties, and shoreline erosion, and by helping to maintain water quality by minimizing sediment disturbance. In restricting powerboats, the ordinance fulfills the City's stated community goals.

Plaintiff has offered evidence suggesting either that the City's concerns are overstated, or that the ordinance contributes only a little to alleviating its concerns. These objections do not hold water. The Courts recognize that, in pursuit of their legitimate goals, municipalities need not be perfect, only rational in their reasoning. *Western & S. Life Ins. Co. v. State Bd. of Equalization of Cal.,* 451 U.S. 648, 671–72, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). Were the Court to decide otherwise, it would establish itself as a super-reviewing legislative body. The Court declines to trench on the political decisions rendered by those elected to make such decisions.

The record reveals legitimate, achievable purposes behind the City's ordinance, and a restriction reasonably designed to help achieve those goals. Plaintiff's constitutional right to equal protection has not been violated. Accordingly, summary judgment is appropriate on this claim.

### C. *Procedural Due Process* [2]

Plaintiff claims defendant twice violated its procedural due process rights—first, in the 2002 criminal prosecution for docking more than two powerboats at the Yacht Club; and, second, by voting down plaintiff's proposed Ordinance No. 355 amendments and denying an amendment to its conditional use permit without reasonable notice and opportunity to be heard.

#### 1. *The 2002 Prosecution*

 Plaintiff claims the 2002 criminal prosecution for violating its conditional use permit was vindictive. *United States v. Leathers,* 354 F.3d 955, 961 (8th Cir.2004). A party seeking to maintain a claim of vindictive prosecution bears the heavy burden of producing evidence pertaining to the prosecutor's motives in bringing the criminal action. *Id.* at 962. Here, plaintiff has wholly failed to carry this burden. It has offered no evidence, beyond the fact of the prosecution itself, to show that the prosecutor harbored any vindictive motive against plaintiff. Plaintiff makes much of the fact that Mayor Love was fired from his employment at the Yacht Club, but it offers no evidence showing this fact led the municipal prosecutor to charge a violation of the conditional use permit.

Beyond this, plaintiff pleaded guilty to the offense and took no appeal from any of the state proceedings. Plaintiff had the opportunity to raise these objections at the time, but did not. The Court finds, as a matter of law and comity with its sister courts in Minnesota, that there is no substance to this claim. Plaintiff suffered no cognizable due process deprivation when it was prosecuted in 2002. This claim is therefore properly dismissed on summary judgment.

---

**2.** The Minnesota and United States Constitutions provide identical procedural due process protection. *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 453 (Minn.1988).

## 2. *Proposed Amendments*

Plaintiff claims it was not afforded an adequate opportunity to be heard when, in 2003, its proposed amendments to Ordinance No. 355 and its conditional use permit were denied. To maintain a procedural due process claim, plaintiff must show it was deprived of a property interest, and that the deprivation did not meet the requirements of due process. *Littlefield v. City of Afton*, 785 F.2d 596, 599 (8th Cir.1986), *overruled on other grounds by, Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 n. 2 (8th Cir.1992). The quanta of due process required varies depending on whether the city was performing a legislative or quasi-judicial function. *Barton Contracting Co., Inc. v. City of Afton*, 268 N.W.2d 712, 715–16 (Minn.1978).

In analyzing this claim, the Court must first examine whether plaintiff had a constitutionally-protected property interest at all. A protected interest in real property arises when state laws and regulations place substantive restrictions on municipal discretion, or when state laws and regulations contain mandatory language requiring permit issuance when certain conditions occur. *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir.1993); *Randy's Sanitation, Inc. v. Wright County*, 65 F.Supp.2d 1017, 1030 (D.Minn.1999).

Plaintiff claims the Minnesota Supreme Court recognizes a property interest in land use permit applications. Plaintiff relies on *Snyder v. City of Minneapolis*, 441 N.W.2d 781 (Minn.1989). There, the court found a valid property interest exists when a municipality has no discretion in the grant or denial of a permit for proposed land use. *Id.* at 791. This occurs, for instance, when an applicant seeks a permit conditioned only on compliance with certain ordinances. *Littlefield*, 785 F.2d at 602.

This case is nearly the polar opposite. The law has long recognized a city council's wide discretion in crafting, adopting, and amending its zoning ordinances. *Sun Oil Co. v. Village of New Hope*, 300 Minn. 326, 220 N.W.2d 256, 261 (1974). Here, plaintiff has failed to allege a protected property interest for Fourteenth Amendment purposes. In the absence thereof, its § 1983 claim for violation of procedural due process is dismissed. *Snyder*, 441 N.W.2d at 791.

Even if the Court could discern a protected property interest, it would have to consider the amount of process due. This depends on whether the City's determination was legislative or quasi-judicial in nature. Minnesota law recognizes the passage or amendment of municipal ordinances to be legislative in nature, requiring only minimal due process. *Sun Oil Co.*, 220 N.W.2d at 260–61. This is contrasted with decisions focusing on one particular party, such as grants or denials of special use permits, which are quasi-judicial in nature. These require reasonable notice and opportunity to be heard. *Barton Contracting*, 268 N.W.2d at 716.

MMI asked the City council to amend the zoning ordinance and conditional use permit. This request falls into the quasi-judicial realm, with correspondingly greater due process protections. The City council focused on one party, even though the matter was framed as an amendment to the entire zoning ordinance. Being quasi-judicial in nature, plaintiff was entitled to reasonable notice and an opportunity to be heard. Its problem is that it was given both.

Plaintiff acknowledges receiving reasonable notice of the hearing. It appeared before the City council and pleaded its case. Plaintiff's only shred of evidence suggesting a lack of opportunity to be

heard is its assertion that Mayor Love strongly encouraged brevity during the hearing. The Court finds, as a matter of law, that this is not a constitutional due process deprivation. Plaintiff presented several people who spoke in support of its proposed amendment before the City council. There is no evidence showing anyone was denied an opportunity to speak at the hearing, nor does the record reveal even a single instance of a speaker being asked to shorten his or her presentation. Because there was no failure of procedural due process, this claim is dismissed.

### D. *Substantive Due Process*

■ To maintain a substantive due process claim, plaintiff must show it was deprived of property without due process of law, and the City council's actions were not only arbitrary, but "truly irrational." *Chesterfield Dev. Corp.*, 963 F.2d at 1104–05. This is a very high standard. The Court finds plaintiff had no property interest sufficient to sustain its claim for violation of the due process clause.

■ Plaintiff makes much of the history of bad blood between Mayor Love and the Crosses. Based upon this, MMI claims the Mayor used his position to poison its relationship with the City of Shorewood. MMI claims Mayor Love voted against MMI's proposed amendment and suborned his fellow City council members to do the same. Plaintiff's contention is not enough.

Even if plaintiff possessed a protected property interest, the Eighth Circuit Court of Appeals is explicit: evidence of personal animus alone is not enough to sustain a claim for violation of substantive due process. *Bituminous Materials, Inc. v. Rice County*, 126 F.3d 1068, 1071 (8th Cir.1997). In *Bituminous Materials, Inc.*, plaintiff presented evidence that council members said they didn't care if plaintiff ever did business in the county, and called

plaintiff's representative an "SOB." *Id.* The court found no substantive due process violation in that case. *Id.* The Eighth Circuit emphasized that there is only a small class of cases, "where land use decisions are so corrupted by the personal motives of local government officials that due process rights are implicated." *Id.* These cases go beyond mere animus, such as denying a permit application for personal pecuniary gain. *Wilkerson v. Johnson*, 699 F.2d 325, 328–29 (6th Cir.1983).

■ Plaintiff's evidence is far short of the mark. There is no evidence that Mayor Love's vote was crucial in the decision. But even if it was, the Constitution does not mandate that decision-makers be without personal bias. Substantive due process is reserved for "truly egregious and extraordinary cases." *Chesterfield Dev. Corp.*, 963 F.2d at 1105. This is simply not the case here. Courts are appropriately reluctant to second-guess zoning decisions, which are susceptible to "simple rote allegations that the ... decision is arbitrary and capricious." *Lemke v. Cass County*, 846 F.2d 469 (8th Cir.1987) (en banc) (Richard S. Arnold, J., concurring). Plaintiff's claim must be dismissed.

In the absence of a constitutional violation, plaintiff's 42 U.S.C. § 1983 claims must be dismissed. Plaintiff's claim for declaratory relief also fails. There is no evidence that the City violated plaintiff's Constitutional rights, and no evidence that the ordinance is unconstitutional.

### IV. *Conclusion*

For the foregoing reasons, defendant's motion for summary judgment is granted, and this matter is dismissed with prejudice.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED AC-CORDINGLY.