**Jeff BARTHELD, et al., Relators,**

v.

**COUNTY OF KOOCHICHING, et al., Respondents.**

No. A05–2124.

Court of Appeals of Minnesota.

July 11, 2006.

James A. Bumgardner, Black, Moore, Bumgardner & Magnussen, Ltd., Elk River, MN, for relators.

Stephen G. Andersen, Isaac Kaufman, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for respondents.

Considered and decided by STONEBURNER, Presiding Judge; DIETZEN, Judge; and HARTEN, Judge.[*]

## OPINION

DIETZEN, Judge.

Relators Jeff and Dana Bartheld challenge respondent Koochiching County's denial of their conditional-use-permit application, arguing that the denial was arbitrary and capricious because they met the requirements under the county's ordinance for the permit. Koochiching County argues that the denial was justified by the adoption of a moratorium ordinance [1] that applied to all bed-and-breakfast applications within the county. Because the moratorium ordinance was invalid and the county's decision was arbitrary and capricious, we reverse and remand.

## FACTS

Relators Jeff and Dana Bartheld own a residence located on Rainy Lake in Koochiching County, Minnesota (the county). Relators wanted to convert their residence into a bed and breakfast (B & B) consisting of five rental units in addition to relators' living space. The residence is in a district zoned by the county as "residential-recreation." Under the county zoning ordinance, the permitted uses for this type of district includes one- and two-family dwellings but not home occupations or commercial businesses. In June 2005, after consulting with the county staff, relators applied for a conditional-use permit (CUP) to operate the B & B as a home occupation. In their application, relators asserted that they met all the requirements under the county's CUP ordinance to gain approval for the project.

On July 14, the Koochiching County Planning and Zoning Commission (zoning commission) held a hearing regarding relators' CUP application. Relators' neighbors expressed a number of concerns about the proposal, including concerns over parking, traffic, noise, and declining property values. The zoning commission delayed making a recommendation and scheduled a second hearing on the matter.

Before the second hearing, eight neighbors signed a petition opposing relators' application on the grounds that the proposal would (1) increase noise, traffic, and parking in the area; (2) require additional dock space along the lake; (3) possibly block their views of the lake; (4) possibly impact the adequacy of the neighborhood sewer system; (5) decrease the value of their properties; (6) introduce strangers

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

[1.] Under Minn.Stat. § 394.34 (2004), a county may adopt a temporary interim zoning ordinance to protect the planning process. Although the county calls it a moratorium ordinance, there is no dispute that it is a temporary interim zoning ordinance under that statute.

into the neighborhood; and (7) be like having a hotel in the area.

In response to the neighbors' concerns, relators sent a letter to the zoning commission agreeing to amend their application by reducing the occupancy from five to two units, imposing a "quiet time" from 10:30 p.m. until 6:00 a.m., not offering liquor, restricting customer parking to relators' property, and requiring its customers to use the Rainy Lake Marina to dock their boats.

On August 11, the zoning commission held a second hearing. Following this hearing, the zoning commission concluded that relators met all the requirements for approval under the county's CUP ordinance and recommended approval of relators' application for a two-unit B & B for a period of five years subject to the revised conditions set forth by relators.

On August 17, the county's Environmental Services Director submitted a request to the County Board of Commissioners (county board) for action on relators' CUP application. The request noted that the project was "controversial" and that many neighbors were concerned over the proposal because of "road congestion, neighborhood incompatibility and other factors."

On August 23, the county board held a hearing on relators' application. Board members stated that they had received many phone calls on the issue from neighbors opposing the B & B and were advised of the possibility of another neighborhood petition with 60 signatures.

During public comment, neighbors expressed concerns that the B & B proposal would result in increased noise and traffic congestion and that the proposal was not compatible with the neighborhood. One neighbor "fear[ed] the bed and breakfast w[ould] create more noise due to entertainment of guest[s] and also w[ould] add more

traffic to an already congested area." Another neighbor expressed concerns that the proposed operation was in "an already congested neighborhood" and was not a "good fit." One neighbor opined that the road would need to be improved before any businesses were added to the area and recommended that the county establish guidelines for the operation of B & Bs in the area so that there are guidelines to consider the location of these businesses.

After public comment, the county board approved a motion to deny the recommendation of the zoning commission to grant the CUP to relators and "plac[ed] a moratorium on all Bed and Breakfast lodging applications until guidelines are established for operation of these businesses in the [c]ounty." The reasons stated for the CUP denial were that "the request [was] hard to support when the vast majority of the property owners in the neighborhood are opposing it" and the board desired to "come[ ] up with further guidelines for establishing B & Bs in the County to ensure they are acting in a uniform manner." The board did not issue or publish a temporary interim zoning ordinance. Relators appealed by writ of certiorari.

## ISSUES

I. Did the county adopt a temporary interim zoning ordinance in accordance with Minn.Stat. § 394.34 (2004)?

II. Was the denial of relators' CUP application to operate a B & B in their residence arbitrary and capricious?

## ANALYSIS

### I.

The county contends that it properly adopted a temporary interim zoning ordinance (interim zoning ordinance) on all applications for B & Bs, which constitutes a legally sufficient basis to deny relators'

CUP application. Relators argue that the interim zoning ordinance was not adopted in accordance with the statute, and is, therefore, invalid.

■■ Under Minn.Stat. § 394.34 (2004), a county has the authority to adopt an interim zoning ordinance to conduct studies and hearings for the purpose of considering, inter alia, the amendment, extension, or addition to its comprehensive plan or official controls within the county. The purpose of the statute is to provide the county with the opportunity to study its comprehensive plan and official controls so that it can, in a meaningful way, consider potential amendments to its zoning maps or ordinances. An interim zoning ordinance adopted in accordance with the statute is a legislative act. *See Interstate Power Co., Inc. v. Nobles County Bd. of Comm'rs*, 617 N.W.2d 566, 574 (Minn.2000) (stating that "[a]mendment of a zoning ordinance is a legislative act"). "Legislative acts affect the rights of the public generally, unlike quasi-judicial acts which affect the rights of a few individuals analogous to the way they are affected by court proceedings." *Id.* Because a moratorium is an interim zoning ordinance that affects all applicants, it is a legislative act.

■■ "As a legislative act, a zoning or rezoning classification must be upheld unless opponents prove that the classification is unsupported by any rational basis related to promoting the public health, safety, morals, or general welfare." *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414–15 (Minn.1981) (quotation omitted). A municipality "has broad discretion in legislative matters, and even if the [county board's] decision is debatable, so long as there is a rational basis for what it does, the courts do not interfere." *Id.* at 415. But compliance with the requirements of Minn.Stat. § 394.34 is a question of law, which we review de novo. *See Brookfield Trade*

*Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998) (statutory interpretation is a question of law, which this court reviews de novo).

■■ Relator argues that the county did not comply with the requirements of the statute, which provides:

If a county is conducting, or in good faith intends to conduct studies within a reasonable time, or has held or is holding a hearing for the purpose of considering a comprehensive plan or official controls or an amendment, extension, or addition to either, ... the board in order to protect the public health, safety, and general welfare may adopt as an emergency measure a temporary interim zoning map or temporary interim zoning ordinance, the purpose of which shall be to classify and regulate uses and related matters as constitutes the emergency. Such interim resolution shall be limited to one year from the date it becomes effective and to one year to renewal thereafter.

Minn. Stat § 394.34. Thus, the county board may adopt as an emergency measure an interim zoning ordinance to protect the public's health, safety, and welfare for the purpose of classifying and regulating land uses. Id. The statute clearly contemplates that the county board adopt a written instrument, i.e., a written interim zoning ordinance, find that an emergency exists, and follow other applicable statutory procedures. Id.; *see* Minn.Stat. § 375.51, subds. 1, 2 (2004) (every county ordinance adopting or amending official controls requires a public hearing preceded by published notice, adoption by majority vote and signed by the chair of the board, and be published). Following adoption and publication, the ordinance must be timely recorded. *Id.*, subd. 1. The county must also establish that: (1) it is conducting, or in good faith intends to

conduct, a study within a reasonable period of time; or (2) has held, or is holding, a hearing to consider either adopting or amending its comprehensive plan or official control; and (3) the interim zoning ordinance shall be limited to one year from its effective date and to a one-year renewal period. Minn.Stat. § 394.34.

■ Here, the minutes from the county board indicate that it approved a motion to "plac[e] a moratorium on all Bed and Breakfast lodging applications until guidelines are established for operation of these businesses in the [c]ounty." Although the motion does not use the language of the statute, it is clear that the motion was to adopt an interim zoning ordinance that would halt all B & B proposals while the county conducted studies.

The county concedes that it (1) did not adopt a written interim zoning ordinance; (2) did not find that an emergency existed; (3) did not intend to conduct a study or hold a hearing; (4) did not limit the duration of the interim zoning ordinance to less than one year; and (5) did not follow the statutory procedures for enactment of an ordinance set forth in Minn.Stat. §§ 375.51, subd. 1, and 394.34. Based on the record before us, we conclude that the county board failed to comply with the requirements of Minn.Stat. § 394.34. Consequently, the interim zoning ordinance was invalid and did not provide a legally sufficient basis to deny relators' application.

## II.

■ Relators contend that they met all the ordinance requirements for a CUP and that the county's denial of its application was therefore arbitrary and capricious. Decisions of a county to grant or deny a CUP are quasi-judicial in nature and reviewable by writ of certiorari. *Interstate Power Co. v. Nobles County Bd. of*

*Comm'rs,* 617 N.W.2d 566, 574 (Minn. 2000). We review quasi-judicial zoning decisions such as the approval or denial of a CUP to determine whether the municipality's actions were arbitrary, capricious, or unreasonable. *Schwardt v. County of Watonwan,* 656 N.W.2d 383, 386 (Minn.2003) (CUP denial); *VanLandschoot v. City of Mendota Heights,* 336 N.W.2d 503, 508 (Minn.1983) (quasi-judicial zoning decisions).

■ "A county's denial of a conditional use permit is arbitrary where the applicant establishes that all of the standards specified by the zoning ordinance as conditions of granting the permit have been met." *Yang v. County of Carver,* 660 N.W.2d 828, 832 (Minn.App.2003). By statute, counties may approve conditional uses if the applicant satisfies the standards set out in the county ordinance. Minn. Stat. § 394.301, subd. 1 (2004). When a county states reasons for denying the permit, a reviewing court may reverse the decision if the reasons are legally insufficient or if the decision is without factual basis. *Nw. Coll. v. City of Arden Hills,* 281 N.W.2d 865, 868 (Minn.1979). The party seeking review has the burden of persuading the reviewing court that those reasons are legally insufficient. *Id.* "Reasonableness is measured by examining whether the standards in the ordinance have been satisfied." *City of Barnum v. Carlton County,* 386 N.W.2d 770, 775 (Minn.App.1986) (citing *White Bear Docking & Storage, Inc. v. City of White Bear Lake,* 324 N.W.2d 174, 176 (Minn.1982)).

Under the Koochiching County Zoning Ordinance (ordinance), permitted uses for properties in districts that are zoned as "residential-recreation" include "[o]ne-family and two-family seasonal and year round dwellings." Koochiching County, Minn., Zoning Ordinance § 2.79(a) (1975). The ordinance provides that "[r]ecreational ser-

vice-oriented uses such as resorts and motels ... and other recreational services which in the opinion of the County Planning Commission are of the same general character or clearly incidental to a permitted use or use authorized by conditional permit." Id. § 2.79(b)(4). The ordinance states that a CUP shall be granted if the board finds that:

(1) the conditional use will not be injurious to the use and enjoyment of the environment, or detrimental to the rightful use and enjoyment of other property in the immediate vicinity, or neighborhood, nor substantially diminish and impair property values within the surrounding neighborhood;

(2) The establishment of the conditional use will not impede the normal and orderly development and improvement of surrounding property for uses predominant in the area;

(3) The location and character of the proposed development are considered to be consistent with a desirable pattern of development for the locality in general;

(4) The proposed development and-or land use be consistent and in keeping with the spirit and intent of this ordinance; [and]

(5) Whenever it is deemed necessary and advisable, a limitation and-or renewal of the conditional use permit may be required.

*Id.* § 5.12.

■ In their application, relators presented evidence that they met all the requirements under the county ordinance. When the zoning commission recommended approval of the CUP, it concluded that relators met all the requirements of the ordinance and that their amendments to their original application satisfied the reasonable concerns of the neighbors. The county board denied relators' application on the basis that (1) "the request

[was] hard to support when the vast majority of property owners in the neighborhood are opposing it," and (2) it was "coming up with guidelines for establishing B & Bs in the County to ensure they are acting in a uniform manner."

■ Because the county did not enact a valid interim zoning ordinance, the remaining basis articulated by the county for denying relators' CUP application was that a majority of the neighbors opposed the project. But neighborhood opposition alone is not a sufficient basis for denying a project. *Amoco Oil Co. v. City of Minneapolis,* 395 N.W.2d 115, 118–19 (Minn.App. 1986) (concluding that "[t]he simple fact that community members oppose a landowner using his land for a particular purpose is not a legally sufficient reason for denying a special use permit") (quoting *Barton Contracting Co., Inc. v. City of Afton,* 268 N.W.2d 712, 718 (Minn.1978)).

Here, the county failed to articulate any other reasons for denying the CUP application. And the county did not specify or refer to its ordinance in denying the CUP application. Without such findings, the county board's denial is presumed arbitrary and capricious, unless the county shows otherwise. *See Crystal Beach Bay Ass'n v. County of Koochiching,* 309 Minn. 52, 55, 243 N.W.2d 40, 42 (Minn.1976) ("[A] prima facie case of arbitrariness exists if the county board's decision is not accompanied by findings to show that its action 'was reached upon a consideration of the facts and was based upon reason rather than the mere individual whim of the ... members.' ").

■ The county suggests that there is a factual basis in the record to support its denial of the CUP and points to neighborhood concerns expressed at the hearing before the county board regarding noise, traffic, and neighborhood compatibility.

But the county failed to adopt findings regarding noise, traffic, or compatibility. "While it is not necessary to prepare formal findings of fact, a county board 'must, at a minimum, have the reasons for its decision recorded or reduced to writing and in more than just a conclusory fashion.'" *Picha v. County of McLeod*, 634 N.W.2d 739, 742 (Minn.App.2001) (citing *Honn v. Coon Rapids*, 313 N.W.2d 409, 416 (Minn.1981)); *see also White Bear Rod and Gun Club v. City of Hugo*, 388 N.W.2d 739, 742 (Minn.1986) (holding that a city council's decision to deny a special use permit lacked adequate findings when it listed nothing more than its sources of information and did not state how the council may have evaluated or used this information). Further, the county failed to make any findings that addressed the CUP factors in the county ordinance. *See Earthburners, Inc. v. County of Carlton*, 513 N.W.2d 460, 463 (Minn.1994) (reversing and remanding CUP denial because board did not state the rationale for its decision with specific reference to relevant provisions of ordinance governing determination of these permits).

■ Several neighbors testified about their concerns regarding noise, traffic, and compatibility. But that testimony was in the nature of vague, generalized concerns, rather than in the nature of actual facts or experience regarding the potential impact of the project on the neighborhood. "A [county] may consider neighborhood opposition only if based on concrete information." *Yang*, 660 N.W.2d at 833; *see also Chanhassen Estates Residents Ass'n v. City of Chanhassen*, 342 N.W.2d 335, 340 (Minn.1984) (concluding that generalized or unsupported neighborhood opposition does not, by itself, provide a legally sufficient reason for a CUP denial).

The county argues that *SuperAmerica Group, Inc. v. City of Little Canada*, 539 N.W.2d 264, 267 (Minn.App.1995), *review denied* (Minn. Jan. 5, 1996), supports its position that neighborhood observations regarding traffic were sufficient to justify the board's denial of relators' CUP application. In *SuperAmerica*, this court affirmed the denial of a CUP based on residents' testimony regarding the existing and potential traffic impact of the project, which included actual observations of current traffic levels and specific instances of traffic congestion. *Id.* at 268.

Here, unlike *SuperAmerica*, the minutes of the county board meeting do not reflect any testimony regarding actual observations of traffic congestion or potential traffic impact. *Cf. id.* The record reveals no basis for the neighbors' claim that traffic congestion is a problem that would increase if relators' CUP application were granted.

Further, there is no evidence in the record of a potential noise impact of the proposal that would violate state law or the county ordinance. And there is no evidence of any potential conflict with the proposed use of relator's home as a B & B with the other land-use activities in the neighborhood, particularly given that relators amended their application to limit nighttime activity.

Because the record does not support the county's denial of the CUP application as amended by relator's letter, we reverse the county's decision and remand with directions that the county issue the permit. *See Picha*, 634 N.W.2d at 743 (reversing and remanding to the county to issue a CUP where it found denial of CUP was arbitrary and capricious); *see also Barnum*, 386 N.W.2d at 776 (concluding that remanding the case for findings would be unfair to appellants because of the risk that any findings made by the county board at this late date would merely rationalize their previous decision).

## DECISION

The county did not adopt a temporary interim zoning ordinance in accordance with Minn.Stat. § 394.34, and the neighborhood opposition to relator's CUP application is based on generalized concerns not supported in the record. Therefore, we reverse the county's decision and remand with directions that the county issue the permit, subject to the conditions set forth in relator's letter amending the application.

**Reversed and remanded.**

could subrogate. Neb.Rev.St. § 48–118.04.

**4. Statutes ☞188, 190**

Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

**5. Statutes ☞190**

Absent ambiguity, courts must give effect to the statutes as they are written; if the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.

**6. Workers' Compensation ☞2189**

Workers' compensation statute governing subrogation interests against payments made by a third party does not adopt a "made whole" doctrine. Neb.Rev. St. § 48–118.04.

**7. Courts ☞89**

A case is not authority for any point not necessary to be passed on to decide the case.

**8. Workers' Compensation ☞2251**

Workers' compensation statute governing subrogation interests against payments made by a third party does not prescribe an exact formula for the trial court to apply when making a fair and equitable distribution of payments. Neb. Rev.St. § 48–118.04.

**9. Constitutional Law ☞70.1(2)**

It is not within the province of the Nebraska Supreme Court to read a meaning into a statute that is not there.

**10. Workers' Compensation ☞2251**

Under the plain language of workers' compensation statute governing subrogation interest against payments made by a third party, the trial court shall make a