*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0901**

Restore House, Inc.,
Appellant,

vs.

Helga Township,
Respondent.

**Filed December 22, 2014
Affirmed
Ross, Judge**

Hubbard County District Court
File No. 29-CV-13-594

Thomas S. Kuesel, Tom Kuesel, P.A., Bemidji, Minnesota (for appellant)

Kenneth H. Bayliss, Quinlivan & Hughes, P.A., St. Cloud, Minnesota (for respondent)

Considered and decided by Chutich, Presiding Judge; Halbrooks, Judge; and Ross, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

We must resolve this land-use dispute between a chemical-dependency treatment facility, which wants to increase its capacity from six to nine residential clients, and a township, which wants to prevent the increase. Helga Township refused to issue a conditional use permit to allow nonprofit chemical-dependency treatment facility Restore

House, Inc. to serve more residents. Restore House unsuccessfully challenged the township's stated reasons through a declaratory-judgment action in the district court, and it makes the same challenge on appeal. Although the facility's substantive challenges do not appear to be meritless, we do not reach them because the district court accurately concluded that the township lacked the legal authority to grant the facility's requested permit. We affirm on that ground.

## FACTS

Restore House is a nonprofit corporation providing faith-based chemical-dependency rehabilitative treatment in Helga Township. Restore House purchased a 14-acre lot with a large house in the township in 2013 to use for residential treatment. Since the facility became operational, up to six men have resided there at once for treatment that lasts from one to six months. The house sits on a lot zoned "Agricultural/Rural Residential District" under the township's land-use ordinance. This zoning designation allows licensed residential facilities serving six or fewer persons to operate without any additional township permission.

Restore House wants to increase its services in that home, but vocal neighbors strongly oppose its effort. In February 2013, Restore House applied to the township for a conditional use permit (CUP) that would allow it to serve nine, rather than just six, residents on the property. The township's planning commission and board of supervisors considered the application at lengthy back-to-back meetings. Public comments at these meetings expressed fear that Restore House's residents would menace the community. Some referenced a 2010 tragedy in Mahnomen County where a resident of an unrelated

treatment facility walked away and killed an elderly couple in their home. One neighbor asked, "Personal trackers, is there a personal tracker on any one of these people?" He added, "I've dealt with these people that are meth heads, druggies, alcoholics, and they need help. . . . But they don't need help next to my house, in our neighborhood." A different commenter said, "I think your program's terrific. . . . I also want to agree with most of us that we don't want it in our backyard." Another warned, "I mean, if somebody gets out, who's going to find them, how? One of us will end up . . . getting hurt." Neighbors complained that the property's rural location would prevent police from responding quickly. Restore House representatives defended their program as beneficial and safe.

The planning commission did not make any recommendation to the board of supervisors about whether to approve the permit application. But it did prepare a list of conditions that might accompany a CUP. In turn, board members indicated that the board should defer to the public, stating, "We want to do what the people in our township want. What do you want?" Ultimately, the board denied Restore House's CUP application.

The board supported its denial with fact findings ostensibly tied to the CUP standards in the township's ordinance. The board found that the "planned use would be detrimental to the public safety of the neighborhood because of the nature of the business and the increased traffic" and because of "numerous 'unknowns' regarding activities on the property including, but not limited to, whether or not there would be enough staff to handle the clientele." The board also found that Restore House's proposed use was "incompatible because it [would] change the essential character of the area, which at this

3

time is primarily residential" and would be "disturbing to the neighborhood, based upon the public input." Finally, the board found that the planning commission's suggested conditions would be "difficult and costly to enforce" because of "privacy and the nature of the business."

Restore House sued, asking the district court to declare that the board denied its CUP application on insufficient and discriminatory grounds. The district court entered judgment against Restore House in part because the ordinance gave the board no legal authority to approve the application. Restore House appeals.

# DECISION

Restore House asks us to reverse the district court's decision affirming Helga Township's decision to deny its conditional-use-permit application. The district court was required to determine whether the township's decision was reasonable, and we undertake the same review de novo, bound by neither the findings nor conclusions of the district court. *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 508 (Minn. 1983); *Yeh v. Cnty. of Cass*, 696 N.W.2d 115, 124–25 (Minn. App. 2005), *review denied* (Minn. Aug. 16, 2005). A town's action is reasonable if its decision-making body understood the law and provided factually based, legally sufficient reasons for its decision. *In re Stadsvold*, 754 N.W.2d 323, 332 (Minn. 2008); *VanLandschoot*, 336 N.W.2d at 508. Restore House maintains that the township's decision was unreasonable because its explanations for the denial are factually and legally deficient. It adds that the decision also discriminates against the disabled. The township defends its explanations, but it

4

principally argues that its ordinance did not authorize the township to grant the CUP regardless of any other bases for the denial.

**I**

Before we can address the township's argument that its ordinance does not allow Restore House's proposed use in the "Agricultural/Rural Residential District," leaving the township with no discretion to issue the requested CUP, we first address the issue of waiver. Restore House maintains that the township improperly raised this issue in the district court after it denied the requested CUP application on other grounds. The failure to raise the issue during the CUP proceedings, argues Restore House, constitutes the township's waiver of the argument. For the following reasons we are not persuaded that the township is foreclosed from contending that it lacked the authority to grant the CUP.

It is true that we generally do not allow land owners to litigate issues that they did not raise in the zoning process. *See Big Lake Ass'n v. Saint Louis Cnty. Planning Comm'n*, 761 N.W.2d 487, 490–91 (Minn. 2009). And it is also true that when a municipality denies a CUP application, "the reviewing court typically should confine itself at all times to the facts and circumstances developed before that body." *Id.* at 491 (quotation omitted). This is because judicial review of a municipality's quasi-judicial decision is "focused on the legal sufficiency of and factual basis for the reasons given" for the decision. *Swanson v. City of Bloomington*, 421 N.W.2d 307, 313 (Minn. 1988). But this case presents the rare situation in which, in addition to the municipality's stated reasons for denying the permit application, the municipality might also have simply lacked the legal authority to grant the application. None of the separation-of-powers

5

concerns that restrain judicial review of an elected body's quasi-judicial decision similarly restrains a court from considering the elected body's post-decision argument that its decision also happened to be compelled as a matter of law. We do not ignore the line of separation by addressing the township's legal argument; rather, we honor it. The municipality is not a mere party in the quasi-judicial decision-making process, it is the quasi-judicial decision maker. The argument urging that we apply the doctrine of waiver here misses that distinction. We hold that neither the district court nor this court is prevented by the doctrine of waiver from affirming a municipality's denial of a conditional use permit based on the municipality's lack of authority to grant the permit even if the municipality first identifies its lack of authority during a judicial proceeding challenging its bases for denying the permit.

Our new-issue jurisprudence also supports this approach. An appellate court should "generally consider only those issues that were presented and considered below." *In re Stadsvold*, 754 N.W.2d at 327 (citing *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn. 1988)). We follow this approach in cases that began before a local-government decision maker. *See id.*; *In re Block*, 727 N.W.2d 166, 178–79 (Minn. App. 2007). But exceptions apply. We may "review any order involving the merits . . . [and] review any other matter as the interest of justice may require." Minn. R. Civ. App. P. 103.04. We have been willing to consider a question raised first even on appeal if it is "plainly decisive of the entire controversy on its merits" and involves undisputed facts. *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 687 (Minn. 1997) (quotation omitted); *see also In re Estate of Barg*, 752 N.W.2d 52, 62 n.6 (Minn. 2008) (addressing a pure legal question); *Oanes*

6

*v. Allstate Ins. Co.*, 617 N.W.2d 401, 403 (Minn. 2000) (deciding a nondispositive legal issue not raised in the district court). We are inclined to consider a question if it includes a new legal issue, was presented clearly in the briefing, was implied by or closely related to the arguments raised below, and does not depend on new or disputed facts. *Watson*, 566 N.W.2d at 688. These well-established exceptions to waiver apply here. Interpretation of the township's zoning ordinance presents a new, purely legal question. The parties both argued the issue extensively in the district court and in this court. The threshold question of whether the ordinance even authorizes the township to issue the requested CUP is implied in the question of whether the board lawfully and rationally denied Restore House's permit application on narrower grounds. And our legal analysis does not depend on any uncertain or disputed facts. All four exception factors favor our considering the question, which might resolve the entire controversy.

## II

Having rejected the contention that the argument is waived, we turn to the merits of the township's argument that its ordinance does not allow Restore House's proposed use in the "Agricultural/Rural Residential District" so that the township had no legal authority to issue the requested CUP. The argument is persuasive.

The authority to restrict land use flows from statutes to local ordinances. The legislature authorizes town boards to designate land uses by zoning ordinances, Minn. Stat. § 462.357 (2012), and it authorizes town boards "by ordinance [to] designate . . . certain land development activities as conditional uses under zoning regulations," Minn. Stat. § 462.3595 (2012). It then authorizes the town board to issue a conditional use

7

permit on "a showing by the applicant that the standards and criteria stated in the ordinance will be satisfied." *Id*. But the statute gives a town board no authority to permit a conditional use that the ordinance has not designated as a conditional use or to issue a permit when the standards "stated in the ordinance" cannot be satisfied.

The township's argument that its zoning ordinance does not designate Restore House's proposed use as a conditional use requires us to examine and interpret the township's CUP-authorizing ordinance. We interpret ordinances de novo. *State by Minneapolis Park Lovers v. City of Minneapolis*, 468 N.W.2d 566, 569 (Minn. App. 1991), *review denied* (Minn. July 24, 1991). In doing so, we construe their terms according to their plain and ordinary meaning. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn. 1980). The controlling provision of the township's ordinance directs that "[o]nly those uses specifically listed in this Ordinance as being allowed within a particular district as a permitted, conditional, interim, or accessory use may occur within that district." Helga Township, Minn., Land Use Ordinance art. V, § 3 (2011). Unlisted proposed uses are allowed in a district only if the board expressly finds that the proposed use is substantially similar to a listed use. *Id.* art. V, §§ 3–4. A landowner may, as a matter of right with no need for governmental action, engage in any use that the ordinance identifies as a "permitted use." *Id*. art. IV, § 1(35). But the landowner may not engage in any conditional use in a district without a permit. *Id.*, § 1(9).

Restore House's property sits in an "Agricultural/Rural Residential District," a district with six express permitted uses:

1.      Farms and agricultural uses;
2.      Forestry . . . ;
3.      Single family residences;
4.      State licensed residential facilities serving six or fewer persons;
5.      Class A home occupations; and
6.      Accessory uses and structures to the above principal uses.

*Id*. art. VI, § 1(c). Unlike its treatment of the other two types of districts (Commercial Districts C-1 and C-2), both of which include many listed conditional uses, the ordinance enumerates no conditional uses for the "Agricultural/Rural Residential District." *Compare id*., § 1, *with id.*, §§ 2–3. And this designation of no conditional uses is the heart of the township's argument. That is, the board's statutory authority to grant any conditional use is restricted to those conditional uses designated by ordinance, and the township's ordinance does not designate residential treatment facilities serving more than six residents as a conditional use in the district.

Restore House argues that the ordinance does not exclude its proposed use from the district. It maintains first that its use qualifies as "multifamily housing," which it insists is specifically permitted in the district. The ordinance does not support the argument. Under the ordinance, Restore House may serve six persons residing in its treatment facility. *Id.* art. VI, § 1(c). This six-person treatment-facility allowance is also required by statute, which treats the facility expressly as a single-family residence, but not as a multifamily residence. *See* Minn. Stat. §§ 245A.11, subd. 2, 462.357, subd. 7 (2012); *Costley v. Caromin House, Inc.*, 313 N.W.2d 21, 27 (Minn. 1981) ("These

statutes specify that a licensed group home for six or fewer . . . persons shall be considered a single-family residential use for zoning purposes."). By contrast, the statutes identify larger licensed residential treatment facilities as multifamily residences, requiring a town to treat programs that serve seven to sixteen clients as it would treat a multifamily residential unit. Minn. Stat. §§ 245A.11, subd. 3, 462.357, subd. 8 (2012). Defeating Restore House's argument, the statutes do not require a town to allow a nine-person residential treatment facility in a district that does not allow multifamily housing, regardless of whether the town has zoned the district as "residential." And also contrary to Restore House's argument, the ordinance's express list of permitted uses does not include "multifamily housing."

Restore House points us to a different part of the ordinance—the "general regulations" article. Under the heading "Multifamily Housing," the "general regulations" article states, "The following regulations/requirements shall apply to all future multi-family development: Minimum lot size of 5 acres inclusive of road right-of-way per dwelling unit *in the Agricultural/Rural Residential District*." Helga Township, Minn., Land Use Ordinance art. VII, § 2(1) (2012) (emphasis added). Despite its referring to "multifamily housing" in the regulations of "the Agricultural/Rural Residential District," the language does not advance Restore House's position. The organization of the ordinance and the language of the different provisions establish this conclusively. Article VI, which determines the "district requirements," lists the six uses after declaring, "The following uses are allowed" in the district without any board-issued permit. This strongly indicates that the list is exclusive.

10

This textual interpretation is consistent with the parties' understanding from the outset. Restore House would not have sought a CUP if it believed it was permitted to operate the nine-person facility as a matter of statutory right. In other words, if multifamily housing were truly a *permitted* use in the zoned district, as Restore House now argues, then its effort to obtain a *conditional* use permit was meaningless; expressly permitted uses need no conditional permission. If, on the other hand, Restore House needed a conditional use permit to increase its facility into a multifamily residence, it was required to demonstrate that the ordinance includes that multifamily, large-facility use as conditional. As we have observed, the ordinance does not.

We need not decide exactly what this provision of the "general regulations" article means (although the township argues plausibly that the reference to "future" multifamily housing indicates that the general provisions were drafted anticipating a potential amendment to add multifamily housing to list of the permitted uses in the district). For our purposes, it is clear from the organization of the ordinance and the specific text that neither multifamily housing generally, nor expanded residential treatment facilities specifically, are designated permitted or conditional uses in the district.

Restore House also highlights other provisions in the same general regulations article to urge similarly that the specified list of six permitted uses in the district is not exclusive. We are not persuaded. It highlights the following language and argues that "churches" and "schools," for example, are also permitted uses despite not being included in the district's list of permitted uses: "Permitted non-residential uses, including churches, schools, etc. are allowed one freestanding sign per street frontage." *Id.*

11

§ 6(I)(2). But again, the theory that the Restore House program is one of the supposedly unlisted *permitted* uses does not support Restore House's appeal. Restore House brought this lawsuit asking the district court to declare that the township unlawfully rejected its expansion as a *conditional* use, not to declare that Restore House's expansion is a *permitted* use needing no board action.

We conclude that the ordinance contains no present mechanism allowing a nine-resident treatment facility in the township's "Agricultural/Rural Residential District" (at least without a board determination of "substantial similarity" to a listed use). Restore House therefore could not, as a matter of law, show that the ordinance's criteria could be satisfied. For this reason we agree with the district court that the board had no legal authority to grant Restore House the conditional use permit it requested.

### III

Restore House contends that the township's stated reasons for denying the permit are insufficient because they are unreasonable. In most cases, we assess the reasonableness of the town's denial of a conditional use permit by examining whether the applicant has shown the standards in the ordinance will be satisfied. *Bartheld v. Cnty. of Koochiching*, 716 N.W.2d 406, 411 (Minn. App. 2006); *see* Minn. Stat. § 462.3595, subd. 1. Restore House's contentions have some merit. The record suggests that the township board was driven largely by vocal opposition. But a local government may consider neighborhood opposition only if it rests on concrete information, not on vague, generalized concerns. *Bartheld*, 716 N.W.2d at 413. And the board should not make findings that contradict the only evidence presented. Here, the board's decision referred

12

to neighborhood opposition. Some neighbors urged that the nature of Restore House's operation would endanger the community, apparently unaware that Restore House already operates its six-person facility in the community and may continue to operate it as a matter of right. Others expressed their fear of drug- or alcohol-induced violence by Restore House residents, apparently oblivious to the undisputed fact that Restore House does not allow either drugs or alcohol or insobriety. The board also cited traffic concerns, but the only discussion at either meeting attempting to quantify traffic indicated that "traffic isn't going to be anything more than a normal five-bedroom house," which might amount to "five to seven cars." Nothing in the record seems to substantially support a finding that Restore House's adding three more residents would significantly affect traffic, endanger the community, or change the residential and agricultural nature of the area.

Despite our misgivings about the cited reasons for the CUP denial, however, our holding that the ordinance does not qualify the proposed expanded facility as a conditional use directs us to affirm. We rest our decision on that ground alone. For three reasons we are not persuaded otherwise by Restore House's suggestion that affirming would require it to move its expanded operation to the harsh environment of a nonresidential, commercial district. First, the ordinance includes various residential uses and residential-friendly uses as conditional uses in the Commercial District C-2. These include "residential dwellings" generally, as well as hospice centers, religious institutions, nursing homes, preschools, schools, "crisis center supportive housing," bed-and-breakfast homes, and "board and care" homes. Ordinance, art. VI, § 3(E). Second,

the ordinance allows for Restore House to expand its operation even in the residential/agricultural district; if it chooses, it could open any number of additional six-person treatment homes in the district without any need for a CUP. And third, even if the township ordinance does allow Restore House to expand only in a commercial district, Restore House identifies nothing in the statute that requires the township to zone less restrictively.

**IV**

Restore House also argues that we should reverse because the township had previously told it that a conditional use permit could be issued, estopping the township from relying on its lack of legal authority to justify the denial. We generally will not ignore applicable law to protect the expectations of a property owner even if the local zoning body bolstered those expectations.

> [A] party seeking to establish equitable estoppel against a government entity must establish four elements. First, there must be "wrongful conduct" on the part of an authorized government agent. Second, the party seeking equitable relief must reasonably rely on the wrongful conduct. Third, the party must incur a unique expenditure in reliance on the wrongful conduct. Finally, the balance of the equities must weigh in favor of estoppel.

*City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 25 (Minn. 2011) (citations omitted). "While the result may be harsh, a municipality cannot be estopped from correctly enforcing the ordinance even if the property owner relied to his detriment on prior city action." *Mohler v. City of St. Louis Park*, 643 N.W.2d 623, 638 (Minn. App. 2002), *review denied* (Minn.

July 16, 2002) (quotation omitted). Restore House has not established any of the bases necessary for us to further consider its equitable estoppel argument.

## V

Restore House asserts also that the town's refusal to issue the CUP should be reversed because it constitutes discrimination, violating the federal Fair Housing Amendments Act. The assertion is not factually or legally supported. The Act prohibits disability discrimination in housing. 42 U.S.C. § 3604(f)(1) (2012). Unlawful discrimination includes "refusal to make reasonable accommodations in rules . . . when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B) (2012). Impairment due to drug addiction and alcoholism fits the Act's definition of handicap. 42 U.S.C. § 3602(h)(1) (2012); 24 C.F.R. § 100.201 (2012). But while some public commenters expressed their desire to exclude chemically-dependent persons from the community, the township of course did not attempt to go that far; it merely denied the CUP application. This denial was compelled by a facially and practically nondiscriminatory local ordinance. And because the ordinance allows for no new multifamily uses in the "Agricultural/Rural Residential District," it does not discriminate on the basis of chemical dependency but, rather, on the basis of residential size. The act does not prohibit this kind of distinction.

**Affirmed.**

15