**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0619**
**A15-2002**

John D. Perschbacher, Relator (A15-0619),
Appellant (A15-2002),

vs.

Freeborn County Board of Commissioners,
Respondent.

**Filed August 8, 2016**
**Affirmed**
**Peterson, Judge**

Freeborn County Board of Commissioners
Resolution No. 15-030

Freeborn County District Court
File No. 24-CV-15-604

Gary W. Koch, Matthew C. Berger, Peter J. Hemberger, Gislason & Hunter LLP, New Ulm, Minnesota (for appellant/relator)

Jay T. Squires, John P. Edison, Rupp, Anderson, Squires & Waldspurger, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Peterson, Judge; and Kalitowski, Judge.[*]

**S Y L L A B U S**

The provision of Minn. Stat. § 15.99, subd. 2(b) (2014), that a failed resolution or a failed motion to approve a request "constitute[s] a denial of the request provided that those

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

voting against the motion state on the record the reasons why they oppose the request" does not require that the reasons for opposing the request be stated at the meeting where the voting occurs.

**O P I N I O N**

 **PETERSON**, Judge

This court consolidated appellant/relator's certiorari appeal from respondent county board's decision on an application for a conditional-use permit with appellant/relator's appeal from the district court's summary-judgment dismissal of appellant/relator's mandamus action. Appellant/relator argues that (1) the district court erred by denying him a writ of mandamus directing the county to issue the permit because his permit request was automatically approved by operation of Minn. Stat. § 15.99, subd. 2; and (2) respondent's denial of his permit request was arbitrary, capricious, and unreasonable. We affirm.

**FACTS**

Under Freeborn County's zoning ordinance governing agricultural districts, "[a]ny agricultural building or structure for the housing of livestock when located outside of a farmyard" is a conditional use and requires a conditional-use permit (CUP) approved by respondent Freeborn County Board of Commissioners. Freeborn County Zoning Ordinance, art. II, § 42-105(1). The Freeborn County Planning Commission must hold at least one public meeting on an application for a CUP. Freeborn County Zoning Ordinance, art. VIII, § 42-612(a). After the hearing, the commission may recommend approval of the CUP if it finds:

Subd. 1. That the conditional use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, not substantially diminish and impair property values within the immediate vicinity.

Subd. 2. That the establishment of the conditional use will not impede the normal and orderly development and improvement of surrounding vacant property for uses predominant to the area.

Subd. 3. That adequate utilities, access roads, drainage and other necessary facilities have been or are being provided.

Subd. 4. That adequate measures have been or will be taken to provide sufficient off-street parking and loading space to serve the proposed use.

Subd. 5. That adequate measures have been or will be taken to prevent or control offensive odor, fumes, dust, noise and vibration, so that none of these will constitute a nuisance, and to control lighted signs and other lights in such a manner that no disturbance to neighboring properties will result.

*Id.* at § 42-614.

Appellant/relator John D. Perschbacher is a livestock producer who contracted to purchase land in an agricultural district in Freeborn County. On December 11, 2014, Perschbacher applied to the county for a CUP to construct on the land a barn capable of housing 2,490 swine.

The planning commission considered Perschbacher's CUP application during a public meeting on January 12, 2015. During the meeting, the county's planning and zoning administrator presented information about neighbors near the proposed barn site, expected levels of annoyance from odors associated with the barn, and the possible use of trees as a windbreak to decrease annoyance levels. The commission heard comments from neighbors

3

who expressed concerns that odors from the proposed barn would affect their lifestyles, businesses, and property values. Following a discussion, the commission voted 3-2 to recommend that respondent approve Perschbacher's application, conditioned on three rows of trees being planted to serve as a windbreak. The commission made findings that addressed the five factors listed in the zoning ordinance.

During a public meeting on January 20, 2015, respondent considered Perschbacher's CUP application. The planning and zoning administrator again presented information, and neighbors again spoke about their concerns about odors from the proposed barn. Because some of respondent's members were not at the meeting, the members present voted to table the application until respondent's next meeting.

Respondent again considered Perschbacher's CUP application during a public meeting on February 3, 2015, and again heard comments from neighbors. Respondent then voted on a resolution "to approve the Conditional Use Request," and the resolution failed on a 2-3 vote. That same day, the planning and zoning administrator wrote a letter to Perschbacher stating that "the Board voted and did not approve your conditional use permit request" and that "[t]he Board will notify you in writing of their decision after the next scheduled board meeting." The letter notified Perschbacher that the county was exercising its right to extend the 60-day statutory period for completing the CUP application process by an additional 60 days.

Respondent considered Perschbacher's CUP application again during a public meeting on February 17, 2015. Respondent unanimously voted to approve a "statement of procedures and reasons for denial of Conditional Use Permit." The statement summarized

4

the comments that had been made in support of and against Perschbacher's CUP request and listed the five factors in the zoning ordinance to be considered when acting on a CUP request. According to the statement, the vote on February 3 "resulted in the denial of the Conditional Use Permit" and was based on all of the material and arguments before the board and the commissioners' individual experience, judgment, and common sense. Also according to the statement, "Each County Commissioner who voted against the Resolution to Approve the Conditional Use Permit acknowledges that their decision and vote was substantially determined by the particular location of the proposed Conditional Use and their analysis of factors required by Findings 1 and 5" in the zoning ordinance.

Perschbacher petitioned this court for a writ of certiorari, seeking review of respondent's actions and failures to act. He also filed a complaint and petition for a writ of mandamus in district court, asserting that "[respondent] has failed to approve or deny [his] Application for a Conditional Use Permit" by the statutory deadline and that his request for a CUP was therefore "automatically approved." Following a hearing on cross-motions for summary judgment, the district court granted summary judgment for respondent. The court concluded that respondent's vote on February 3, together with the statement approved on February 17, satisfied the statutory requirements for denying Perschbacher's CUP request.

Perschbacher appealed from the summary judgment, and this court consolidated the appeal with Perschbacher's certiorari appeal.

5

**ISSUES**

I.     Was Perschbacher's CUP application automatically approved because respondent failed to deny the application in a timely manner?

II.     Was the board's decision unreasonable, arbitrary, or capricious?

**ANALYSIS**

**I.**

Perschbacher argues that, under Minn. Stat. § 15.99, subd. 2(b), he is entitled to a writ of mandamus directing the county to issue him a CUP because his application was automatically approved when respondent failed to deny the application in a timely manner. "The writ of mandamus may be issued to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station." Minn. Stat. § 586.01 (2014). A decision on a petition for a writ of mandamus that involves statutory interpretation is reviewed de novo. *Hans Hagen Homes, Inc. v. City of Minnetrista*, 728 N.W.2d 536, 539 (Minn. 2007).

The parties dispute the interpretation of Minn. Stat. § 15.99, subd. 2, which states:

> (a) Except as otherwise provided[1] . . . an agency must approve or deny within 60 days a written request relating to zoning . . . for a permit, license, or other governmental approval of an action. Failure of an agency to deny a request within 60 days[2] is approval of the request. If an agency denies the

---

[1] There is no dispute that none of the exceptions from section 15.99, subdivision 2, applies to Perschbacher's CUP application.

[2] Minn. Stat. § 15.99, subd. 3(f) (2014), provides:

> An agency may extend the time limit in subdivision 2 before the end of the initial 60-day period by providing written notice of the extension to the applicant. The notification must state

6

request, it must state in writing the reasons for the denial at the time that it denies the request.

(b) When a vote on a resolution . . . to approve a request fails for any reason, the failure shall constitute a denial of the request provided that those voting against the motion state on the record the reasons why they oppose the request. A denial of a request because of a failure to approve a resolution or motion does not preclude an immediate submission of a same or similar request.

(c) Except as provided in paragraph (b), if an agency, other than a multimember governing body, denies the request, it must state in writing the reasons for the denial at the time that it denies the request. If a multimember governing body denies a request, it must state the reasons for denial on the record and provide the applicant in writing a statement of the reasons for the denial. If the written statement is not adopted at the same time as the denial, it must be adopted at the next meeting following the denial of the request but before the expiration of the time allowed for making a decision under this section. The written statement must be consistent with the reasons stated in the record at the time of the denial. The written statement must be provided to the applicant upon adoption.

On February 3, respondent's members voted on a resolution "to approve the Conditional Use Request," and the resolution failed. The members did not vote on a resolution to deny the CUP request. Respondent does not dispute that, during the February 3 meeting, the members who voted against the resolution did not state the reasons for their votes.

---

the reasons for the extension and its anticipated length, which may not exceed 60 days unless approved by the applicant.

There is no dispute that the initial 60-day period was extended by 60 days and respondent's February 17 meeting occurred within the extended 120-day period.

7

Perschbacher argues that the requirement in subdivision 2(b) that "those voting against the motion state on the record the reasons why they oppose the request" means that the reasons must be stated "contemporaneously" with and "at the same meeting in which a governmental agency votes down a motion to approve a zoning request." He contends that respondent's vote on February 3 together with the statement approved on February 17 cannot constitute a denial of his CUP request, and respondent therefore failed to deny his request within the 120-day extended statutory period, which resulted in automatic approval of the request under subdivision 2(a).

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). "To interpret a statute, [a court] first assesses whether the statute's language, on its face, is clear or ambiguous." *Sleiter v. Am. Family Mut. Ins. Co.*, 868 N.W.2d 21, 24 (Minn. 2015) (quotation omitted). The court "give[s] words and phrases their plain and ordinary meaning" and "read[s] the statute as a whole and give[s] effect to all of its provisions." *Engfer v. Gen. Dynamics Advanced Info. Sys., Inc.*, 869 N.W.2d 295, 300 (Minn. 2015). "A statute is ambiguous if, as applied to the facts of the case, it is susceptible to more than one reasonable interpretation." *Marks v. Comm'r of Revenue*, 875 N.W.2d 321, 324 (Minn. 2016). "If a statute is unambiguous, [the court will] apply the statute's plain meaning." *In re Dakota Cty.*, 866 N.W.2d 905, 909 (Minn. 2015).

Subdivision 2(b) does not require that board members who vote against a resolution to approve a request state their reasons for opposing the request on the record at the time of the vote. The only timing requirement in section 15.99 is that an agency must approve

8

or deny a request within either an initial 60-day period or a 60-day extension of the initial period. A court "may not add words to a statute that the Legislature has not supplied." *Johnson v. Cook Cty.*, 786 N.W.2d 291, 295 (Minn. 2010); *see also* Minn. Stat. § 645.16 ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."). Therefore, we will not add words to paragraph (b) that would require that reasons for opposing a resolution to approve a request be stated on the record during the meeting at which the resolution failed.

The purpose of Minn. Stat. § 15.99 is to establish "deadlines for local governments to take action on zoning applications." *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). The uncertain effect of respondent's February 3 vote to reject the resolution to grant Perschbacher's CUP request made it difficult to determine what action respondent had taken on the request, which, in turn, made it difficult to enforce a deadline; respondent acted, but its action neither granted nor denied Perschbacher's request. The legislature addressed this uncertainty when it added paragraph (b) to the statute after this court held that "[a]n agency's rejection of a resolution granting a permit is not equivalent to a denial of a permit application." *Demolition Landfill Servs., LLC v. City of Duluth*, 609 N.W.2d 278, 279 (Minn. App. 2000), *review denied* (Minn. July 25, 2000), *superseded in part by statute*, 2003 Minn. Laws ch. 41, § 1, at 322, *overruled in part by Johnson*, 786 N.W.2d at 296 & n.5.

Subdivision 2(b) states that a failure to approve a request "shall constitute a denial of the request *provided that* those voting against the motion state on the record the reasons

9

why they oppose the request." (Emphasis added.) This means that when a vote is taken on a resolution to approve a request, two conditions must be met before action on the resolution constitutes a denial; the vote must fail, and those who voted against the resolution must state on the record why they opposed the request. *See* Minn. Stat. § 645.19 (2014) (stating that "[p]rovisos shall be construed to limit rather than extend the operation of the clauses to which they refer."). This second condition removes the uncertainty about the meaning of the vote. If opponents of the resolution do not state the reasons for their opposition on the record, there is no denial, and the agency continues to risk automatic approval of the request for failing to take action before the deadline. If opponents state their reasons on the record, there is a denial, and the creation of the record demonstrates when the denial occurred. But the statute does not restrict when the reasons may be stated on the record.

Accordingly, on February 3, when respondent's members voted on the resolution to approve Perschbacher's request for a CUP and the vote failed, the request was not denied. Under the plain language of paragraph (b), however, respondent satisfied the second condition for a denial on February 17, when respondent's members who voted against the resolution stated on the record the reasons why they opposed the resolution. Consequently, a denial occurred on February 17, and the reasons for the denial were stated on the record at the time of the denial.

## II.

Perschbacher argues that the board's decision to deny him a CUP was "arbitrary, capricious, and unreasonable." He contends that the board failed to "provide any specific

findings . . . sufficient to permit meaningful judicial review" and that any rationale the board did provide lacks a factual basis and is unreasonable.

A "[r]uling on a conditional use permit application is a quasi-judicial act" that "is reviewable by writ of certiorari." *Interstate Power Co. v. Nobles Cty. Bd. of Comm'rs*, 617 N.W.2d 566, 574 (Minn. 2000). An appellate court "will reverse a governing body's decision regarding a conditional use permit application if the governing body acted unreasonably, arbitrarily, or capriciously." *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 75 (Minn. 2015). A "decision is arbitrary or capricious if it represents the [decision-maker]'s will and not its judgment." *In re Review of 2005 Annual Automatic Adjustment of Charges for all Elec. & Gas Utils.*, 768 N.W.2d 112, 118 (Minn. 2009); *see also Mammenga v. State Dep't of Human Servs.*, 442 N.W.2d 786, 789 (Minn. 1989) (stating that a "decision may be arbitrary or capricious if the decision is based on whim or is devoid of articulated reasons").

A "board should state with clarity and completeness the facts and conclusions essential to its decision so that a reviewing court can determine from the record whether the facts furnish justifiable reason for its action." *Morey v. Sch. Bd. of Indep. Sch. Dist. No. 492, Austin Pub. Sch.*, 271 Minn. 445, 450, 136 N.W.2d 105, 108 (1965) (noting that "[t]here is no hard-and-fast rule as to how detailed and specific findings should be"). "While it is not necessary to prepare formal findings of fact, a county board must, at a minimum, have the reasons for its decision recorded or reduced to writing and in more than just a conclusory fashion." *Bartheld v. Cty. of Koochiching*, 716 N.W.2d 406, 413 (Minn. App. 2006) (quotations omitted).

According to the statement adopted by respondent on February 17, the three votes against the February 3 resolution were "substantially determined by the particular location of the proposed Conditional Use and . . . analysis of the factors required by Findings 1 and 5" in the zoning ordinance. Factor one addresses whether the conditional use will be "injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, not substantially diminish and impair property values within the immediate vicinity." Factor five, in part, addresses whether "adequate measures have been or will be taken to prevent or control offensive odor, fumes, dust, noise and vibration so that none of these will constitute a nuisance."

Respondent's statement indicates that the January 20 comments of neighbors "living within a mile of the proposed conditional use [who] spoke against" a grant of the CUP

> focus[] on the odor caused by hog confinement operations already existing nearby and their inability, if the conditional use was granted, to use and enjoy their existing residences and permitted business, given the prevailing winds, and the existence of a number of other hog confinement operations already existing within a 2 mile radius of the proposed conditional use location.

The statement also indicates that the February 3 comments of neighbors who "spoke against" a grant of the CUP focused on "odor and their ability to use, enjoy their real property, and in the case of [two neighbors] operate their business, a permitted use beauty shop located next to their rural residence given the odor coming from the hog confinement operation and prevailing winds."

Respondent's statement demonstrates that the reasons why respondent's members opposed Perschbacher's request were the odors expected to be caused by the proposed

12

swine barn; the impact that odors would have on neighbors' enjoyment of their property, a nearby business, and property values; and the existence of other livestock operations in the area. Respondent's articulation of reasons supporting the CUP denial is adequate to permit appellate review.

A request for a CUP may be denied "if the proposed use endangers the public health or safety or the general welfare of the area affected or the community as a whole." *RDNT*, 861 N.W.2d at 76 (quotation omitted). Appellate review of a decision on a CUP request is "limited and deferential." *Big Lake Ass'n v. St. Louis Cty. Planning Comm'n*, 761 N.W.2d 487, 491 (Minn. 2009) (stating that "the court's authority to interfere in these matters should be sparingly invoked" (quotations omitted)). The appellate court should "not . . . weigh the evidence" and "should ordinarily defer to [the decision-maker]'s judgment on conflicting evidence." *RDNT*, 861 N.W.2d at 76 (quotation omitted). "County zoning authorities have wide latitude in making decisions on conditional use permits, and except in rare cases where there is no rational basis for the decision, it is the duty of the judiciary to exercise restraint and accord appropriate deference to civil authorities in routine zoning matters." *Big Lake Ass'n*, 761 N.W.2d at 491 (quotations and citation omitted).

During respondent's January 20 and February 3 meetings, neighbors of the proposed barn site commented on their experiences living near several existing livestock operations. They described how odors from those operations affected property values and the ability to enjoy the outdoors. Neighbors raised concerns that odors from the proposed barn would dissuade customers from visiting a nearby beauty salon, potentially driving the salon out of business. One neighbor expressed his belief that respondent's proposed use of trees to

13

serve as a windbreak would be ineffective in decreasing the impact of odors. Respondent's meetings included significant discussion about the number of existing livestock operations in the vicinity of the proposed barn.

Respondent was presented with an estimation, calculated according to a model developed by the University of Minnesota, of the levels of annoyance from odors associated with the proposed barn. Perschbacher contends that this estimation demonstrates that much of the concern about odor from his proposed barn is unfounded and that the barn will cause less annoyance than the county has historically permitted for livestock operations. Perschbacher argues that the neighbors' statements "did not provide a sufficient factual basis to overcome" the information provided by the estimation.

"[N]eighborhood opposition alone is not a sufficient basis for denying a project." *Bartheld*, 716 N.W.2d at 412-13 (reversing denial of CUP to operate bed and breakfast where county board had reasoned that "the request was hard to support when the vast majority of property owners in the neighborhood are opposing it," but where neighbors' "testimony was in the nature of vague, generalized concerns, rather than in the nature of actual facts or experience regarding the potential impact of the project on the neighborhood" (quotation omitted)). In *Trisko v. City of Waite Park*, this court determined that, in denying a request for a CUP to operate a granite quarry, a city council had "improperly discounted" expert evidence that the quarry would not produce dust that posed a health risk "in favor of neighbors' unsubstantiated concerns" that the quarry would produce harmful dust. 566 N.W.2d 349, 356 (Minn. App. 1997) (stating that, "because the neighbors based their fears of an expected increase in respiratory problems on unscientific

14

speculation, not medical fact, the city acted arbitrarily by ignoring [the CUP applicant]'s expert evidence"), *review denied* (Minn. Sept. 25, 1997).

But in *SuperAmerica Grp., Inc. v. City of Little Canada*, this court determined that, in denying a request for a CUP to construct a service station, a city council had not improperly rejected expert testimony that the station would cause little traffic congestion in favor of concerns by residents and business owners that the station would aggravate existing traffic congestion. 539 N.W.2d 264, 266-68 (Minn. App. 1995) (stating that CUP may be denied "if the proposed use would adversely affect the general welfare," that neighborhood opposition may be considered "if based on concrete information," and that "residents expressed more than a vague concern about future neighborhood problems"), *review denied* (Minn. Jan. 5, 1996); *see also Roselawn Cemetery v. City of Roseville*, 689 N.W.2d 254, 260 (Minn. App. 2004) (affirming city council's denial of CUP to build crematorium and stating that "[a] city council is free to disregard an expert's opinion when it is presented with conflicting non-experts' opinions, including those of area residents, so long as the reasons are concrete and based on observations, not merely on fear or speculation").

In this case, the neighbors presented more than "vague, generalized concerns" about odors from the proposed barn; rather, the neighbors spoke of their "actual . . . experience regarding the potential impact of the project on the neighborhood." *See Bartheld*, 716 N.W.2d at 413. Neighbors commented about living near existing livestock operations and about their inability to enjoy the outdoors at certain times of the day or when the wind is blowing in a certain direction. Even according to the University of Minnesota annoyance

15

estimation, neighbors would be impacted by odors from the proposed barn, and neighbors expressed concern about the cumulative effect of odors from the proposed barn and other livestock operations in the area. *Cf. SuperAmerica*, 539 N.W.2d at 268 (affirming denial of CUP where even applicant's experts acknowledge that service station would cause some traffic congestion in already congested area).

In response to Perschbacher's CUP request, respondent considered the five factors in the zoning ordinance relevant to a decision on a CUP application. Based on the material and statements presented and the particular location of the proposed use, a majority of respondent's members determined that the proposed use did not satisfy all of the relevant factors. We therefore conclude that the board's decision to deny Perschbacher's request for a CUP had a rational basis and was not unreasonable, arbitrary, or capricious.

## D E C I S I O N

Respondent's vote against the resolution to approve Perschbacher's CUP request together with the later adoption of a statement providing the reasons for opposing the request constituted a denial of the request under Minn. Stat. § 15.99, subd. 2(b), within the statutory deadline for processing the CUP application. Perschbacher's request was not automatically approved, and the district court did not err by denying a writ of mandamus directing the county to issue a CUP. Respondent's denial of Perschbacher's CUP request was not unreasonable, arbitrary, or capricious.

**Affirmed.**